**FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000776
16-MAR-2022
08:38 AM
Dkt. 49 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

CITY AND COUNTY OF HONOLULU, by the DEPARTMENT OF THE CORPORATION
COUNSEL, Appellant-Appellant,
v.
HONOLULU POLICE COMMISSION, Appellee-Appellee,
and
LOUIS M. KEALOHA, Appellee

NO. CAAP-20-0000776

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC191000907)

MARCH 16, 2022

GINOZA, CHIEF JUDGE, HIRAOKA AND MCCULLEN, JJ.

OPINION OF THE COURT BY HIRAOKA, J.

The Honolulu **Police Commission** determined that the **City** and County of Honolulu must pay for an attorney to defend former Honolulu Police Department (**HPD**) chief Louis M. **Kealoha** in a federal criminal prosecution. A federal jury later found Kealoha guilty. The City appealed the Police Commission's determination

that Kealoha was entitled to a defense.  The Circuit Court of the First Circuit affirmed.[1]  The City filed this secondary appeal.

For the reasons explained below, we hold that the Police Commission properly applied its administrative rules — which are consistent with the language of, and the legislative intent behind, Hawaii Revised Statutes (**HRS**) §§ 52D-8 (2012) and 52D-9 (2012) — to the relevant facts in the record.  Kealoha's subsequent conviction did not retroactively vitiate the Police Commission's determination.  We affirm the "Findings of Fact, Conclusions of Law, and Decision and Order" issued by the Police Commission on May 10, 2019; and the "Final Judgment" entered by the circuit court on December 2, 2020.

## I.    BACKGROUND

Kealoha was the chief of HPD.  On October 19, 2017, a federal grand jury returned a 20-count **Indictment** against Kealoha, Kealoha's wife Katherine Kealoha, and four HPD officers: Derek Wayne **Hahn**, Minh-Hung **Nguyen**, Gordon **Shiraishi**, and Daniel **Sellers**.  Indictment, United States v. Kealoha, Case 1:17-cr-00582-JMS-RLP (D. Haw. Oct. 19, 2017) (the **Federal Prosecution**). The Indictment alleged, among other things, that the defendants conspired to frame a person identified as **"G.K.P."** for stealing the Kealohas' mailbox.

Kealoha — through his attorney, Kevin P.H. **Sumida** — tendered the defense of the Federal Prosecution to the City by

---

[1]    The Honorable James H. Ashford presided.

2

letter to the Police Commission dated March 21, 2018. Enclosed with the letter was a copy of the Indictment.

The Police Commission asked Kealoha to complete an HPD form HPD-195 (Request for Legal Counsel) and submit it to HPD's Professional Standards Office. Kealoha completed the HPD-195, attaching another copy of the Indictment. The Police Commission acknowledged receipt by letter stating: "The Commission will determine whether the acts for which you are being criminally prosecuted were done in the performance of your duties and will consult with the Department of the Corporation Counsel in making its decision."

The Police Commission asked the City's Department of the **Corporation Counsel** to review Kealoha's HPD-195 and "provide . . . a recommendation[.]" Corporation Counsel recommended that Kealoha's request "be scheduled for [a] contested case hearing." (Underscoring omitted.) Corporation Counsel indicated that a written recommendation for disposition of the request "will be provided to the Commission in advance of the scheduled hearing date."

The Police Commission informed Kealoha that he could request a contested case hearing. The Police Commission's letter to Sumida stated: "The basic issue to be determined would be whether the act for which [Kealoha] is being prosecuted or sued was done in the performance of an officer's duty as a police officer." Kealoha was informed, "If you do not request [a] hearing . . . the Commission will proceed to grant or deny your

3

request for legal counsel based on the information available (including reports referred to in your request for representation and the recommendation of the Corporation Counsel), and will notify you of the final determination."

Sumida responded, "if the Police Commission has decided to deny the request for a defense, then we would request a contested case hearing." Sumida also informed the Police Commission that the Federal Prosecution "now involves more than one criminal case number[.]" Sumida sent the Police Commission copies of the First Superseding Indictment and the Second Superseding Indictment, and the federal district court's Order Clarifying Case Number Assignments and Status of Indictments.[2]

The Police Commission informed Sumida: "Because the First and Second Superseding Indictments differ from the initial Indictment submitted by Mr. Kealoha . . . it is necessary for him to submit a [sic] HPD-195 form for each superseding indictment[.]"

As directed, Kealoha submitted copies of the First Superseding Indictment and the Second Superseding Indictment, under separate HPD-195 forms, to HPD. HPD sent the documents to

---

[2] The order explained that the Indictment in the Federal Prosecution (Cr. No. 17-00582-JMS-RLP) contained 20 counts. The First Superseding Indictment contained 23 counts. The federal district court severed counts 1-11 (charging all six defendants) from counts 12-23 (charging the Kealohas only) for separate trials. The Second Superseding Indictment covered the crimes charged in counts 12-23, and added two counts against the Kealohas only. Because of the severed counts, the Second Superseding Indictment was given a separate case number, Cr. No. 18-00068-JMS-RLP. The court then dismissed counts 12-23 from the First Superseding Indictment in Cr. No. 17-00582-JMS-RLP, so that case involved the First Superseding Indictment against all six defendants, while Cr. No. 18-00068-JMS-RLP involved the Second Superseding Indictment against the Kealohas only.

4

the Police Commission, which sent the documents to Corporation Counsel. Corporation Counsel again advised the Police Commission to conduct a contested case hearing on Kealoha's requests, and that a written recommendation would be provided before the hearing date.

By memorandum dated January 16, 2019, Corporation Counsel advised the Police Commission:

> Based on available information, Chief Kealoha's actions and activities alleged in the Indictments were not done in the performance of his duties as a police officer nor within the course and scope of his employment. Accordingly, it is recommended that the [sic] Chief Kealoha's request for legal representation provided by the City as described in the [requests for legal services] be denied.

A contested case hearing was held on March 6, 2019.[3] Sumida represented Kealoha, who did not attend or testify at the hearing.

On May 10, 2019, the Police Commission issued two written decisions. Kealoha's request for counsel for the First Superseding Indictment was granted.[4] His request for counsel for the Second Superseding Indictment was denied.[5]

---

[3] The members of the Police Commission at that time were: Loretta A. Sheehan, Chair; Shannon L. Alivado, Vice-Chair; Karen Chang; Gerard G. Gibson; Steven H. Levinson; and Carrie K.S. Okinaga.

[4] The Police Commission's "Findings of Fact, Conclusion of Law, and Decision and Order" was signed by Chair Sheehan and members Levinson, Chang, and Okinaga. Vice-Chair Alivado voted against granting Kealoha's request. Commissioner Gibson was not present for the vote.

[5] The Police Commission's "Findings of Fact, Conclusion of Law and Decision and Order" was signed by Chair Sheehan, Vice-Chair Alivado, and members Levinson, Chang, and Okinaga. Commissioner Gibson was not present for the vote.

On June 10, 2019, the City appealed to the circuit court from the Police Commission's decision granting Kealoha's request for counsel for the First Superseding Indictment.[6] The City's appeal was heard on October 16, 2020. On November 19, 2020, the circuit court entered an order affirming the Police Commission's decision. The Final Judgment was entered on December 2, 2020.

This appeal followed.[7]

## II.  POINTS OF ERROR

The City's opening brief raises two points of error:

1.  "The circuit court erred in affirming the [Police] Commission's Decision to grant L. Kealoha's request for legal representation for the criminal charges filed against him by the United States in Cr. No. 17-00582"; and

2.  "The circuit court erred when it applied the insurance policy/complaint allegation rule analysis as the analytical framework for deciding representation requests under HRS §§[]52D-8 and 52D-9."

---

[6]  Kealoha appealed from the Police Commission's decision denying his request for counsel for the Second Superseding Indictment. As of March 9, 2022, Kealoha's appeal remained pending in circuit court. See Kealoha v. City & Cnty. of Honolulu, 1CC191000913 (Cir. Ct. Haw. appeal docketed June 12, 2019).

[7]  HRS § 91-14(j) (Supp. 2019) provides:

The court shall give priority to contested case appeals of significant statewide importance over all other civil or administrative appeals or matters and shall decide these appeals as expeditiously as possible.

6

### III. **STANDARDS OF REVIEW**

#### A.    Administrative Agency Appeal

Our review of a circuit court decision on an appeal from an administrative agency determination is a secondary appeal; we must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) (Supp. 2019) to the agency's decision.  Flores v. Bd. of Land & Nat. Res., 143 Hawaiʻi 114, 120, 424 P.3d 469, 475 (2018).

HRS § 91-14 (Supp. 2019) is entitled "Judicial review of contested cases."  Subsection (g) provides:

> Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> > (1)    In violation of constitutional or statutory provisions;
> >
> > (2)    In excess of the statutory authority or jurisdiction of the agency;
> >
> > (3)    Made upon unlawful procedure;
> >
> > (4)    Affected by other error of law;
> >
> > (5)    Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> >
> > (6)    Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91-14(g):

> **[C]onclusions of law are reviewed de novo**, pursuant to subsections (1), (2) and (4); questions regarding procedural defects are reviewable under subsection (3); **findings of fact . . . are reviewable under the clearly erroneous standard**, pursuant to subsection (5), and an agency's

7

> exercise of discretion is reviewed under the arbitrary and capricious standard, pursuant to subsection (6).

Cmty. Ass'ns of Hualalai, Inc. v. Leeward Plan. Comm'n, 150 Hawaiʻi 241, 252, 500 P.3d 426, 437 (2021) (emphasis added) (citations omitted).

An agency's label of a finding of fact or a conclusion of law does not determine the standard of review. See Crosby v. State Dep't of Budget & Fin., 76 Hawaiʻi 332, 340, 876 P.2d 1300, 1308 (1994).

> As a general matter, a finding of fact or a mixed determination of law and fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding or determination, or (2) despite substantial evidence to support the finding or determination, the appellate court is left with the definite and firm conviction that a mistake has been made. Substantial evidence is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

Del Monte Fresh Produce (Haw.), Inc. v. International Longshore & Warehouse Union, Local 142, 128 Hawaiʻi 289, 302, 287 P.3d 190, 203 (2012) (citation omitted). If an agency's finding or conclusion presents mixed questions of fact and law, is supported by valid findings of fact, and reflects an application of the correct rule of law, it will not be overturned. See Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007).

In addition, "[w]here both mixed questions of fact and law are presented, deference will be given to the agency's expertise and experience in the particular field and the court should not substitute its own judgment for that of the agency."

AlohaCare v. Ito, 126 Hawaiʻi 326, 341, 271 P.3d 621, 636 (2012) (quoting Peroutka v. Cronin, 117 Hawaiʻi 323, 326, 179 P.3d 1050, 1053 (2008)).  "To be granted deference, however, the agency's decision must be consistent with the legislative purpose."  Id. (citation omitted).

### B.    Statutory Interpretation

We review the interpretation of a statute de novo.  In re Hawaiian Elec. Co., 149 Hawaiʻi 343, 359, 489 P.3d 1255, 1271 (2021).  "In construing statutes, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning."  Fragiao v. State, 95 Hawaiʻi 9, 18, 18 P.3d 871, 880 (2001) (cleaned up).  "Even when the meaning of a law is apparent on its face, legislative history may be used to confirm the court's interpretation of a statute's plain language."  Priceline.com, Inc. v. Dir. of Tax'n, 144 Hawaiʻi 72, 88, 436 P.3d 1155, 1171 (2019) (cleaned up).

### C.    Agency Rule Interpretation

The principles of construction that apply to statutes also apply to administrative agency rules.  In re Hawaiian Elec. Co., 149 Hawaiʻi at 359, 489 P.3d at 1271.

IV. **DISCUSSION**

A. **Statutory and Regulatory Structure**

HRS § 52D-8 (2012) provides:

**Police officers; counsel for.** Whenever a police officer is prosecuted for a crime or sued in a civil action[8] for acts done in the performance of the officer's duty as a police officer, the police officer shall be represented and defended:

> (1) In criminal proceedings by an attorney to be employed and paid by the county in which the officer is serving; and
>
> (2) In civil cases by the corporation counsel or county attorney of the county in which the police officer is serving.

The legislature intended that the statute maintain "the morale of the [police] force" "in view of the increasing number of charges, both civil and criminal, brought against police officers[.]" Alejado v. City & Cnty. of Honolulu, 89 Hawaiʻi 221, 229-30, 971 P.2d 310, 318-19 (App. 1999) (quoting S. Stand. Comm. Rep. No. 376, in 1941 Senate Journal, at 860-61).[9]

---

[8] This appeal involves a police officer prosecuted for a crime; this opinion does not address the circumstances under which a police officer sued in a civil action would be entitled to representation under HRS § 52D-8.

[9] We also noted that HRS § 52D-8 was "similar to" Cal. Gov't Code § 995. Alejado, 89 Hawaiʻi at 228, 971 P.2d at 317. Of the California statute, one appellate court explained:

> The reason for the rule is: ["]The duties of a [police officer] are performed for the benefit of the public . . . .["] With such protection afforded, the public can expect that its laws will be zealously enforced without any hesitation occasioned by considerations of possible personal involvement in defending resulting litigation.

Sinclair v. Arnebergh, 36 Cal. Rptr. 810, 813 (Ct. App. 1964) (quoting City of Corsicana v. Babb, 290 S.W. 736, 737 (Tex. Comm'n App. 1927)); see also Hall v. Cal. Dep't of Corr., 835 F.Supp. 522, 527 (N.D. Cal. 1993) (noting that such laws "protect[] public employees from the financial burdens that result from third party claims and thus motivate[] state employees to perform their jobs zealously"); Tarasoff v. Regents of the Univ. of Cal., 551 P.2d 334, 350 n.21 (Cal. 1976) (stating that due to such laws, "[p]ublic employees . . . no longer have a significant reason to fear liability as they go about their

(continued...)

The police commission of each county has exclusive original jurisdiction to determine whether a police officer is entitled to a defense under HRS § 52D-8.  HRS § 52D-9 (2012) provides:

> **Determination of scope of duty**.  The determination of whether an act, for which the police officer is being prosecuted or sued, was done in the performance of the police officer's duty, so as to entitle the police officer to be represented by counsel provided by the county, shall be made by the police commission of the county.  Before making a determination, the police commission shall consult the county attorney or the corporation counsel, who may make a recommendation to the police commission with respect thereto if the county attorney or corporation counsel so desires.  The determination of the police commission shall be conclusive for the purpose of this section and section 52D-8.

See Alejado, 89 Hawaiʻi at 226, 971 P.2d at 315.  The statute's reference to the "conclusiveness" of the police commission's determination refers to the City's procedures; it does not preclude judicial review.  Id. at 231, 971 P.2d at 320.

The Police Commission is authorized to adopt rules necessary for the conduct of its business.  Revised Charter of the City and County of Honolulu (**RCCCH**) § 6-1606 (2017).  Rule 11 of the Rules of the Honolulu Police Commission (**RHPC**) applies to the Police Commission's determinations under HRS § 52D-9.  RHPC Rule 11-1 provides, in relevant part:

> (e)  For purposes of this Rule 11, the following shall be considered by the Commission in determining whether "an act, for which the police officer is being prosecuted or sued, was done in the performance of the officer's duty":

---

[9]  (...continued) official tasks").

> (i)     whether the act was incident to required or authorized work-related activity;
>
> (ii)    whether the act was incident to a course of conduct taking place at a time that the officer was required to engage in the course of conduct by the nature of the officer's responsibilities as a police officer; and
>
> (iii)   whether the act was incident to a course of conduct engaged in at a place that the officer was authorized to engage in it by the nature of the officer's responsibilities as a police officer.

The City does not challenge the validity of RHPC Rule 11-1; the City challenges only the manner in which the rule was applied in this case.  We note that the language of RHPC Rule 11-1 is consistent with both the plain language of HRS §§ 52D-8 and 52D-9, and the legislature's stated intent to maintain the morale of the police force, see Alejado, 89 Hawai'i at 229-30, 971 P.2d at 318–19.

Within this framework we first address the City's structural argument, then its substantive one.

**B.    The City's Structural Argument**

**1.    The "complaint allegation rule" does not apply to a county police commission's determination under HRS § 52D-8.**

The circuit court held:

> 8.    The Court finds that the tripartite relationship among the officer, the county, and the officer's appointed attorney is analogous to the relationship among an insurer, defense counsel, and the insured, and, as such, the obligation to defend is determined by the *complaint allegation rule*.  The Court finds this rule to be the appropriate analytical framework.

12

(Emphasis added.) The City contends that the circuit court erred by applying the "complaint allegation rule" to the Police Commission's review of Kealoha's request for counsel.

Under Hawaiʻi law, the complaint allegation rule determines a liability insurer's duty to defend its insured (and, in some cases, a non-insurer indemnitor's contractual duty to defend an indemnitee) in a civil action seeking an award of damages:

> If a complaint alleges claims that fall within the coverage of the indemnity provision, then, according to the complaint allegation rule, the duty to defend begins. This is separate and distinct from the duty to indemnify. Once the trier of fact makes a determination on the claims in the lawsuit, the duty to indemnify will either arise or lie dormant. Claims falling within the indemnity provision will trigger the duty to indemnify, while claims falling outside the provision will relieve the indemnitor of [their] duty to indemnify. In our view, this is the only equitable interpretation that gives life to non-insurance indemnity clauses and prevents indemnitors from benumbing the duty to defend until after a case has been litigated.

Arthur v. State, Dep't of Hawaiian Home Lands, 138 Hawaiʻi 85, 96, 377 P.3d 26, 37 (2016) (quoting Pancakes of Haw., Inc. v. Pomare Props. Corp., 85 Hawaiʻi 286, 292, 944 P.2d 83, 89 (App. 1997)).[10]

The circuit court's analogy to the tripartite relationship that arises when a liability insurer pays the cost for an attorney to represent an insured is understandable given the case law addressing whether counsel retained by a county to defend a police officer in a criminal case had a conflict of interest. See Fragiao, 95 Hawaiʻi at 20, 18 P.3d at 882 ("[T]he

---

[10] In Arthur, the supreme court held that the complaint allegation rule did not apply to indemnity provisions in construction contracts, citing HRS § 431:10-222 ("Construction industry; indemnity agreements invalid."). Id. at 97, 377 P.3d at 38.

tripartite relationship among the County, [the lawyer paid by the County to defend the police officer], and [the police officer] is analogous to the relationship among an insurer, defense counsel, and insured, cited with approval in Comment 10 to [Hawaiʻi Rules of Professional Conduct] Rule 1.7 and discussed in Finley.") (citing Finley v. Home Ins. Co., 90 Hawaiʻi 25, 975 P.2d 1145 (1998)).

The analogy does not, however, extend to the City's obligation to defend a police officer against criminal charges under HRS § 52D-8. A liability insurer's duty to defend is contractual in nature, determined by the language of the insurance policy. Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Hawaiʻi 166, 169, 872 P.2d 230, 233 (1994). The insurer's duty to defend is triggered "whenever there is a potential for indemnification liability of the insurer to the insured." Id. Determining the "potential for indemnification liability" under an insurance policy simply means asking the question: "If all of the factual allegations of the complaint are proven to be true, would any portion of the resultant legal liability be covered under the defendant's insurance policy?" If the answer is "yes" then there is a duty to defend under the complaint allegation rule; if the answer is "no" then there is no duty to defend. See id. ("The duty to defend is limited to situations where the pleadings have alleged claims for relief which fall within the terms for coverage of the insurance contract. Where pleadings fail to allege any basis for recovery

14

within the coverage clause, the insurer has no obligation to defend.") (citations omitted).

By contrast, a county's obligation to defend a police officer being prosecuted for a crime is statutory, determined by the language of HRS § 52D-8.  That statute obligates a county to pay for counsel "[w]henever a police officer **is prosecuted** for a crime . . . **for acts done** in the performance of the officer's duty as a police officer." (Emphasis added.)  Significantly, the county police commission's decision is made before determination of the police officer's guilt or innocence.  <u>Compare</u> HRS § 52D-8, <u>with</u> Conn. Gen. Stat. Ann. § 53-39a (West).[11]  The complaint allegation rule would require that the county police commission assume the criminal charges against the police officer — including the officer's alleged motive for the alleged acts — to be true.  That would be contrary to the plain language of, and the legislative intent behind, HRS § 52D-8.  The complaint allegation rule did not apply to the Police Commission's determination in this case.

> **2.   The "scope of employment" test does not apply to a county police commission's determination under HRS § 52D-8.**

---

[11]     Connecticut requires that police officers defend themselves against criminal charges arising out of their conduct as police officers. "Section 53-39a . . . authorizes indemnification for . . . legal fees[] incurred by officers of local police departments who are prosecuted for crimes allegedly committed by them in the course of their duties when the charges against them are dismissed or they are found not guilty." <u>Cislo v. City of Shelton</u>, 692 A.2d 1255, 1260 (Conn. 1997) (citation omitted).  By contrast, HRS § 52D-8 requires a defense, not indemnity.

The City contends the appropriate test to determine whether a police officer is entitled to a defense under HRS § 52D-8 is the "scope of employment" test. That test is used to determine an employer's vicarious tort liability for acts or omission by an employee under the common-law doctrine of respondeat superior.[12] Under that test:

> (1) Conduct of a servant is within the scope of employment if, but only if:
>
> > (a) it is of the kind [the servant] is employed to perform;
> >
> > (b) it occurs substantially within the authorized time and space limits; [and]
> >
> > (c) it is actuated, at least in part, ***by a purpose to serve the master***[.]
>
> . . . .
>
> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or ***too little actuated by a purpose to serve the master***.

Henderson v. Pro. Coatings Corp., 72 Haw. 387, 392, 819 P.2d 84, 88 (1991) (emphasis added) (quoting Restatement (Second) of Agency § 228 (1958)); see also Wong-Leong v. Hawaiian Indep. Refinery, Inc., 76 Hawaiʻi 433, 441, 879 P.2d 538, 546 (1994) ("In determining the scope of employment, the applicable test is whether . . . the enterprise derived any benefit from the activity.") (citations omitted).

---

[12] Our reference in Alejado to "course and scope of employment" was a quote from the former "Guidelines of the Honolulu Police Commission Request for Legal Counsel[.]" 89 Hawaiʻi at 223 n.2, 971 P.2d at 312 n.2. Alejado did not address RHPC Rule 11-1, nor did we decide that the "scope of employment" test applied to the police officer's request for legal representation at issue in that case. In this case, the City conceded that RHPC Rule 11-1 does "not use a 'scope of employment' analysis."

Nothing in HRS §§ 52D-8 or 52D-9, or in RHPC Rule 11-1, implicates a police officer's "purpose to serve" HPD (or lack thereof), or whether HPD derived any benefit from the police officer's alleged acts. As the Police Commission points out, "HRS § 52D-8 does not require examination of the motive or intent of a police officer in determining whether legal representation shall be provided." (Underscoring omitted). The plain language of HRS § 52D-8 requires that a county pay for a police officer's defense if the officer is prosecuted for "***acts done*** in the performance of the officer's duty as a police officer[.]" (Emphasis added.) Application of the "scope of employment" test — elements of which are the police officer's intent to serve the police department and the police department's having derived a benefit from the officer's alleged acts — would be contrary to the plain language of HRS § 52D-8 and RHPC Rule 11-1. It is hard to think of any crime committed by a police officer that could have been intended by the officer to serve the police department, or from which the department could derive any benefit. Application of the common-law "scope of employment" test would defeat both the plain language of HRS § 52D-8 and the legislature's intent to maintain the morale of the police force. See Alejado, 89 Hawaiʻi at 229-30, 971 P.2d at 318-19. The scope of employment test did not apply to the Police Commission's determination in this case.

17

### 3. Kealoha was not required to testify at his contested case hearing.

The City also argues that Kealoha failed to sustain his burdens of proof, production, and persuasion[13] by failing to testify during his contested case hearing that he intended the acts for which he was being prosecuted to benefit the City.

A police officer being prosecuted for a crime has a constitutionally protected property right to county-provided legal representation if the officer is prosecuted for acts done in the performance of the officer's duty as a police officer. See Alejado, 89 Hawai'i at 229-30, 971 P.2d at 318-19. The officer may not be deprived of that right without due process. Id. at 230-31, 971 P.2d at 319-20. "[D]ue process requires that the [Police] Commission conduct contested case hearings[,]" id. at 225, 971 P.2d at 314 (citations omitted), "with the full procedural protection afforded by [the Hawai'i Administrative

---

[13]     In support of this argument, the City directs this court to the burdens established in HRS § 91-10 and RHPC Rule 11-4(c). HRS § 91-10 (2012) provides, in relevant part:

> **§ 91-10 Rules of evidence; official notice.** In contested cases:
>
> . . . .
>
> (5)   Except as otherwise provided by law, the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion. The degree or quantum of proof shall be a preponderance of the evidence.

RHPC Rule 11-4(c) provides:

> The police officer requesting representation shall have the burden of proof including the burden of producing evidence and the burden of persuasion by a preponderance of the evidence.

Procedure Act,]" id. at 231, 971 P.2d at 320 (underscoring omitted).

A police officer being prosecuted for a crime also has a constitutional right against self-incrimination under the Fifth Amendment to the United States Constitution and article 1, section 10 of the Hawaiʻi Constitution. See State v. Bowe, 77 Hawaiʻi 51, 57, 881 P.2d 538, 544 (1994). Requiring Kealoha to testify before the Police Commission — in a contested case hearing open to the public — during the pendency of the Federal Prosecution would have required that he waive his constitutional right against self-incrimination in order to obtain the defense for which HRS § 52D-8 provides, in violation of his right to due process. See State v. Valera, 74 Haw. 424, 438, 848 P.2d 376, 382 (1993) (holding that use at sentencing of statements obtained in violation of defendant's privilege against self-incrimination violates defendant's right to due process); HRS § 91-10(1) (2012) ("The agencies shall give effect to the rules of privilege recognized by law[.]").

Having to choose between his constitutional right against self-incrimination and his right to a defense under HRS § 52D-8 would also have impermissibly placed Kealoha in the proverbial Procrustean dilemma[14] described by the supreme court in

---

[14] Procrustes is a character from Greek mythology who ran an inn. He would tell passing travelers that he owned a special bed that exactly matched whoever lay down on it, no matter how short or tall. What the guests were not told was that Procrustes would stretch them on a rack if they were too short for his bed, or chop off their legs if they were too tall. In either case, the guest would die. The phrase "Procrustean bed" "has become proverbial for arbitrarily – and perhaps ruthlessly – forcing someone or something to fit

(continued...)

Dairy Rd. Partners v. Island Ins. Co., 92 Hawaiʻi 398, 417, 992 P.2d 93, 112 (2000) and Nautilus Ins. Co. v. Lexington Ins. Co., 132 Hawaiʻi 283, 288, 321 P.3d 634, 639 (2014).  Kealoha was not required to testify during his contested case hearing.

> **4.    HRS § 52D-8 requires that a county police commission consider the police officer's alleged act, but not the officer's alleged motive.**

Under the Hawaiʻi Penal Code every criminal offense must contain a conduct element.  State v. Mita, 124 Hawaiʻi 385, 391, 245 P.3d 458, 464 (2010).  HRS § 702-205 (2014) provides:

> The elements of an offense are such (1) **conduct**, (2) attendant circumstances, and (3) results of conduct, as:
>
> > (a)    Are specified by the definition of the offense, and
> >
> > (b)    Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

(Emphasis added.)[15]  "Conduct" is defined as "an act or omission, or, where relevant, a series of acts or a series of omissions, or a series of acts and omissions."  HRS § 701-118 (2012).

The plain language of HRS § 52D-8 and RHPC Rule 11-1 implicates the police officer's conduct (as defined by HRS § 701-

---

[14]    (...continued)
into an unnatural scheme or pattern."  The Editors of Encyclopedia Britannica, Procrustes, Britannica, https://www.britannica.com/topic/Procrustes (last updated Jan. 4, 2011).  Procrustes was eventually killed by Theseus, but that could be a subject for another footnote in another case.

[15]    Federal law is similar.  See United States v. Apfelbaum, 445 U.S. 115, 131 (1980) ("In the criminal law, both a culpable mens rea and a criminal actus reus are generally required for an offense to occur.").  "Mens rea" is "[t]he state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime[.]"  Mens Rea, Black's Law Dictionary (11th ed. 2019).  "Actus reus" is "[t]he wrongful deed that comprises the physical components of a crime and that generally must be coupled with mens rea to establish criminal liability[.]"  Actus Reus, Black's Law Dictionary (11th ed. 2019).

118); it does not implicate the police officer's motive for committing the alleged act for which the officer is being prosecuted. HRS § 52D-8 requires that a police commission determine whether the **act** allegedly committed by the police officer was within "the performance of the officer's duty as a police officer[.]" In making that determination, a police commission must consider the allegations made in the charging document concerning the police officer's **acts** — the conduct element — and disregard allegations about the officer's motive for committing the alleged acts. If the **acts** alleged were within the performance of the officer's duty as a police officer, the officer is entitled to a defense under HRS § 52D-8, regardless of the officer's alleged motive.[16]

We next address the City's substantive argument.

**C.    The circuit court did not err in affirming the Police Commission's determination that Kealoha was entitled to defense counsel for the First Superseding Indictment.**

On appeal to the circuit court, the City challenged the Police Commission's findings of fact (**FOF**) nos. 18, 19, 20, and 21; conclusions of law (**COL**) nos. 2 and 3;[17] and the decision and order granting Kealoha's request for defense counsel.

---

[16]    The Police Commission's second conclusion of law no. 3 appropriately stated: "The Commission renders no conclusion of law regarding the merits of the First Superseding Indictment." Determining the merits of the First Superseding Indictment — including Kealoha's alleged subjective intent behind his alleged conduct — was the role of the federal jury, not the Police Commission.

[17]    The Police Commission's conclusions of law contained two conclusions of law no. 3. The City challenges the first conclusion of law no. 3.

### 1. Finding of Fact No. 18

The Police Commission found, in relevant part:

> 18. The Commission finds that **the factual allegations in Paragraph 37a of the First Superseding Indictment** . . . which provide "in relevant part that in or about June 2011, L. KEALOHA caused CIU[18] officers to conduct physical surveillance of G.K.P., and to continue such surveillance from time to time through June 2013"[ ]allege acts done in the performance of Kealoha's duty as a police officer because **the alleged acts**, even if unlawful and **regardless of motive**, were incident to: (a) "a required or authorized work-related activity"; (b) "a course of conduct taking place at a time that the officer was required to engage in the course of conduct by the nature of the officer's responsibilities as a police officer;" [sic] and (c) "a course of conduct engaged in at a place that the officer was authorized to engage in it by the nature of the officer's responsibilities as a police officer." See [RHPC] Rules [sic] 11-1(e)(i)-(iii).

(Cleaned up) (emphasis added).

FOF no. 18 is a mixed finding of fact and conclusion of law. To the extent it is a finding of fact it is not clearly erroneous because paragraph 37 of the First Superseding Indictment alleged, in relevant part:

> 37. In furtherance of the conspiracy, the conspirators committed the following overt acts, among others, within the District of Hawaii and elsewhere:

---

[18] According to the First Superseding Indictment:

A separate, federally-authorized and specialized unit of HPD called the Criminal Intelligence Unit ("CIU") was responsible for gathering intelligence and data on organized crime, terrorism, and gang threats facing the City and County of Honolulu. The members of CIU did not collect evidence to be used in the investigation and prosecution of criminal cases, but instead, passed intelligence information about criminal threats to other units in HPD and federal law enforcement partners. Because of their specialized duties and responsibilities, officers in CIU were supervised by a lieutenant, who reported to a captain, who ultimately reported to the Chief of Police, which from 2009 to 2017 was L. KEALOHA. Due to that close relationship, the Chief of Police played a direct role in selecting and appointing officers to CIU.

> a.    In or about June 2011, L. KEALOHA . . .
> caused CIU officers to conduct physical surveillance
> of G.K.P., and to continue such surveillance from time
> to time through June 2013.

To the extent FOF no. 18 was a conclusion of law, it was not wrong.  HRS § 52D-3 (2012) provides:

> The chief of police shall have the powers and duties as
> prescribed by law, the respective county charter, and as
> provided by this chapter.

RCCCH § 6-1604 describes the powers, duties, and functions of the chief of HPD:

> The chief of police shall:
>
> (a)    Be responsible for the preservation of the public
>        peace; the protection of the rights of persons and
>        property; the prevention of crime; the detection and
>        arrest of offenders against the law and the
>        enforcement and prevention of violations of all laws
>        of the state and city ordinances and all rules and
>        regulations made in accordance therewith.
>
> (b)    Train, equip, maintain and supervise the force of
>        police officers.
>
> . . . .
>
> (g)    Perform such other duties as may be required by this
>        charter or by law.

The scope of the chief's duty under RCCCH § 6-1604 is extremely broad.  It applies 24 hours per day, covers all of the City and County of Honolulu, and includes supervision of all police officers within HPD.[19]

---

[19]    Any police officer, even while "off duty" — that is, outside of the officer's scheduled work shift and/or assigned beat or duty station — may be called upon to perform their duty as a police officer.  HRS § 52D-15 (2012) provides:

> **Off-duty police officers; benefits for personal injuries.**
> For the purposes of chapters 88 [Pension and Retirement
> Systems] and 386 [Workers' Compensation], a police officer
> who is injured, disabled, or killed while actually engaged
> in the apprehension or attempted apprehension of law

(continued...)

It was within the scope of Kealoha's duty as chief to cause HPD officers to surveil a suspect. The act of authorizing surveillance was thus "incident to required or authorized work-related activity" by Kealoha.

For purposes of HRS § 52D-8, causing "CIU officers to conduct physical surveillance of G.K.P." was an act "done in the performance of [Kealoha]'s duty as a police officer." It was "incident to required or authorized **work-related activity**" under RHPC Rule 11-1(e)(i). (Emphasis added.) It was "incident to a course of conduct taking place at a **time** that the officer was required to engage in the course of conduct by the nature of the officer's responsibilities as a police officer" under RHPC Rule 11-1(e)(ii). (Emphasis added.) And it was "incident to a course of conduct engaged in at a **place** that the officer was authorized to engage in it by the nature of the officer's responsibilities as a police officer" under RHPC Rule 11-1(e)(iii). (Emphasis

---

[19]   (...continued)
violators or suspected law violators, or in the preservation of peace, or in the protection of the rights or property of persons shall be deemed to have been injured, disabled, or killed while in the **actual performance of duty**, and the injury, disability, or death shall be deemed to have been caused by accident arising out of and in the course of the police officer's employment, notwithstanding that the accident causing the injury, disability, or death occurred at a **time, place, or time and place**, not within the police officer's regular tour of duty and notwithstanding that the police officer was not acting under the direction of the police officer's superiors at the time and place of the accident; provided that the accident occurs within the jurisdiction wherein the police officer is commissioned and while the police officer is **acting** solely as a police officer.

(Emphasis added.)

added.)  The Police Commission's conclusion was supported by its findings of fact and was a correct application of the law.

### 2.    Finding of Fact No. 19

The Police Commission found, in relevant part:

> 19.    The Commission finds that **the factual allegations in Paragraph 37cc** . . . which provide in relevant part that "on or about June 27, 2013, L. KEALOHA created a false police report identifying G.K.P. as the suspect of an alleged burglary at the Kealohas then personal residence on June 23 or 24, 2013"[ ]allege acts done in the performance of Kealoha's duty as a police officer because **the alleged act**, even if unlawful and **regardless of motive**, was incident to: (a) "a required or to [sic] authorized work-related activity"; (b) "a course of conduct taking place at a time that the officer was required to engage in the course of conduct by the nature of the officer's responsibilities as a police officer;" [sic] and (c) "a course of conduct engaged in at a place that the officer was authorized to engage in it by the nature of the officer's responsibilities as a police officer."  See [RHPC] Rules [sic] 11-l(e)(i)-(iii).

(Cleaned up) (emphasis added).

FOF no. 19 is a mixed finding of fact and conclusion of law.  To the extent it is a finding of fact it is not clearly erroneous because paragraph 37 of the First Superseding Indictment alleged, in relevant part:

> 37.    In furtherance of the conspiracy, the conspirators committed the following overt acts, among others, within the District of Hawaii and elsewhere:
>
> . . . .
>
> cc.    On or about June 27, 2013, L. KEALOHA, . . . MINH-HUNG NGUYEN, and DEREK WAYNE HAHN created a false police report identifying G.K.P. as the suspect of an alleged burglary at the KEALOHAs' then personal residence on June 23 or 24, 2013.

It was within the scope of Kealoha's duty as chief to cause HPD officers to prepare reports.  Thus, for purposes of HRS § 52D-8, Kealoha's alleged participation in the creation of a

report about G.K.P. was an act "done in the performance of [Kealoha]'s duty as a police officer" and "incident to required or authorized work-related activity" under RHPC Rule 11-1(e)(i). The Police Commission's conclusion was supported by its findings of fact and was a correct application of HRS § 52D-8 and RHPC Rule 11-1(e)(i)-(iii).

### 3.    Finding of Fact No. 20

The Police Commission found, in relevant part:

> 20.    The Commission finds that ***the factual allegations in Paragraph 37ee*** . . . which provide in relevant part that, "on or about June 29, 2013, L. KEALOHA caused DANIEL SELLERS to direct HPD officers to arrest G.K.P. for stealing their mailbox," allege acts done in the performance of Kealoha's duty as a police officer because ***the alleged act***, even if unlawful and ***regardless of motive***, was incident to: (a) "a required or to [sic] authorized work-related activity"; (b) "a course of conduct taking place at a time that the officer was required to engage in the course of conduct by the nature of the officer's responsibilities as a police officer;" [sic] and (c) "a course of conduct engaged in at a place that the officer was authorized to engage in it by the nature of the officer's responsibilities as a police officer." <u>See</u> [RHPC] Rule 11-1(e)(i)-(iii).

(Cleaned up) (emphasis added).

FOF no. 20 is a mixed finding of fact and conclusion of law.  To the extent it is a finding of fact it is not clearly erroneous because paragraph 37 of the First Superseding Indictment alleged, in relevant part:

> 37.    In furtherance of the conspiracy, the conspirators committed the following overt acts, among others, within the District of Hawaii and elsewhere:
>
> . . . .
>
> ee.    On or about June 29, 2013, L. KEALOHA . . . caused DANIEL SELLERS to direct HPD officers to arrest G.K.P. for stealing their mailbox.

It was within the scope of Kealoha's duty as chief to cause HPD officers to arrest persons suspected of committing a crime.  Thus, for purposes of HRS § 52D-8, Kealoha's act of instructing Sellers to cause other police officers to arrest G.K.P. would have been "done in the performance of [Kealoha]'s duty as a police officer" and "incident to required or authorized work-related activity" under RHPC Rule 11-1(e)(i).  The Police Commission's conclusion was supported by its findings of fact and was a correct application of HRS § 52D-8 and RHPC Rule 11-1(e)(i)-(iii).

### 4.    Finding of Fact No. 21

The Police Commission found, in relevant part:

> 21.    The Commission finds that **the factual allegations in Paragraph 37ff** . . . which provide that "on or about June 29, 2013, between 5:09 p.m. and 5:12 p.m., L. KEALOHA and DEREK WAYNE HAHN exchanged approximately three phone calls," allege facts done in the performance of Kealoha's duty as a police officer because **the alleged acts, regardless of motive**, were incident to: (a) "a required or authorized work-related activity"; (b) "a course of conduct taking place at a time that the officer was required to engage in the course of conduct by the nature of the officer's responsibilities as a police officer;" [sic] and (c) "a course of conduct engaged in at a place that the officer was authorized to engage in it by the nature of the officer's responsibilities as a police officer."  See [RHPC] Rules [sic] 11-l(e)(i)-(iii).

(Cleaned up) (emphasis added).

FOF no. 21 is a mixed finding of fact and conclusion of law.  To the extent it is a finding of fact it is not clearly erroneous because paragraph 37 of the First Superseding Indictment alleged, in relevant part:

> 37.    In furtherance of the conspiracy, the conspirators committed the following overt acts, among others, within the District of Hawaii and elsewhere:

27

. . . .

> ff. On or about June 29, 2013, between 5:09 p.m. and 5:12 p.m., L. KEALOHA and DEREK WAYNE HAHN exchanged approximately three phone calls.

The First Superseding Indictment also alleged that on June 29, 2013: Kealoha's wife identified G.K.P. as the person shown in a security video stealing the Kealohas' mailbox; Kealoha caused Sellers to have G.K.P. arrested for stealing the mailbox; and Hahn was the person who supervised HPD CIU officers (including Sellers). It was within Kealoha's duty as chief to communicate with subordinate officers to effectuate the arrest of a person suspected of committing a crime. Thus, for purposes of HRS § 52D-8, Kealoha's alleged phone calls with Hahn on the day G.K.P. was arrested would (if they concerned the arrest) have been "done in the performance of [Kealoha]'s duty as a police officer" and "incident to required or authorized work-related activity" under RHPC Rule 11-1(e)(i). The Police Commission's conclusion was supported by its findings of fact and was a correct application of HRS § 52D-8 and RHPC Rule 11-1(e)(i)-(iii).

### 5. Conclusion of Law No. 2

The Police Commission concluded, in relevant part:

> 2. Pursuant to Rule 11-l(e) of the Honolulu Police Commission Rules 2018, effective October 28, 2018,
>
>> the following shall be considered by the Commission in determining whether 'an act, for which the police officer is being prosecuted or sued, was done in the performance of the officers' [sic] duty':

> (i)    whether the act was incident to required or authorized work-related activity;
>
> (ii)   whether the act was incident to a course of conduct taking place at a time that the officer was required to engage in the course of conduct by the nature of the officer's responsibilities as a police officer; and
>
> (iii) whether the act was incident to a course of conduct engaged in at a place that the officer was authorized to engage in it by the nature of the officer's responsibilities as a police officer.

"An agency's interpretation of its own rules is generally entitled to deference unless 'plainly erroneous or inconsistent with the underlying legislative purpose.'" Kilakila ʻO Haleakala v. Bd. of Land & Nat. Res., 138 Hawaiʻi 383, 396, 382 P.3d 195, 208 (2016) (quoting Panado v. Bd. of Trs., Emps.' Ret. Sys., 134 Hawaiʻi 1, 11, 332 P.3d 144, 154 (2014)). "This deference arises from the fact that agencies possess and exercise subject-matter expertise and experience the courts generally lack." Keep the North Shore Country v. Bd. of Land & Nat. Res., ___ Hawaiʻi ___, ___, ___ P.3d ___, ___, SCAP-19-0000449, 2022 WL 522648, at *14 (Haw. Feb. 22, 2022) (citation omitted). Therefore, "deference will be given to the agency's expertise and experience in the particular field and the court should not substitute its own judgment for that of the agency." AlohaCare, 126 Hawaiʻi at 341, 271 P.3d at 636 (quoting Peroutka, 117 Hawaiʻi at 326, 179 P.3d at 1053). "This is particularly true where the law to be applied is not a statute but an administrative rule promulgated by the same agency interpreting it." Kilakila ʻO

29

Haleakala, 138 Hawaiʻi at 403, 382 P.3d at 215 (quoting Camara v. Agsalud, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984)).

The City does not contend that RHPC Rule 11-1(e) is ambiguous or that it is legally inconsistent with HRS § 52D-8. The plain language of RHPC Rule 11-1(e) and its subparts establish factors for the Police Commission to consider in determining whether an *act* for which a police officer is being prosecuted was "done in the performance of the officer's duty as a police officer" within the meaning of HRS § 52D-8. Consistent with the plain language of (and legislative intent behind) HRS § 52D-8, the rule does not include the police officer's motive as a factor.

### 6. Conclusion of Law No. 3

The Police Commission concluded, in relevant part:

> 3. Kealoha's alleged acts, referred to supra in Paragraphs 18, 19, 20, and 21 were done in the performance of Kealoha's duty as a police officer so as to entitle him to be represented and defended by an attorney to be employed and paid by the City and County of Honolulu, pursuant to HRS §§ 52D-8 and -9.

COL no. 3 was supported by the Police Commission's findings of fact (about the allegations contained in the First Superseding Indictment) and was a correct application of HRS § 52D-8 and RHPC Rule 11-1(e)(i)-(iii).

### 7. Decision and Order

The Police Commission concluded, in relevant part:

> Pursuant to the foregoing Findings of Fact and Conclusions of Law, the Commission finds that LOUIS M. KEALOHA has met his burden of proof and persuasion regarding

> his claim for representation and further pursuant to HRS
> § 52D-9, the Commission hereby GRANTS Kealoha's request for
> legal counsel.

Kealoha met his burdens of proof and persuasion by providing the First Superseding Indictment to the Police Commission.  The Police Commission's decision and order was supported by its findings of fact and was a correct application of HRS § 52D-8 and RHPC Rule 11-1(e)(i)-(iii).

We take judicial notice, pursuant to Rule 201 of the Hawaii Rules of Evidence (**HRE**),[20] that a federal jury eventually found Kealoha guilty on counts 1, 2, 6, and 8 of the First Superseding Indictment.  Minutes, United States v. Kealoha, Case 1:17-cr-00582-JMS-WRP (D. Haw. June 27, 2019), ECF No. 834.  The verdict was returned on June 27, 2019; on May 10, 2019, when the Police Commission's Findings of Fact, Conclusions of Law, and Decision and Order were issued, Kealoha's guilt or innocence had not been determined.  The same federal jury also found Shiraishi

---

[20]     HRE Rule 201 provides, in relevant part:

> **Judicial notice of adjudicative facts**.  (a) Scope of rule. This rule governs only judicial notice of adjudicative facts.
>
>      (b)   Kinds of facts.  A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
>
>      (c)   When discretionary.  A court may take judicial notice, whether requested or not.
>
>      . . . .
>
>      (f)   Time of taking notice.  Judicial notice may be taken at any stage of the proceeding.

HRE Rule 201, Chapter 626, Hawaii Revised Statutes (2016).

— one of the alleged co-conspirators — not guilty on all counts; a Judgment of Acquittal was entered in his favor on December 17, 2020.  Judgment of Acquittal, United States v. Shiraishi, Case 1:17-cr-00582-JMS-WRP (D. Haw. Dec. 17, 2020), ECF No. 1042.  Had Shiraishi requested a defense under HRS § 52D-8, the law would have equally applied to his request.  Kealoha's eventual conviction did not retroactively vitiate the Police Commission's application of RHPC Rule 11-1(e).  It would have been contrary to the plain language of, and legislative intent behind, HRS § 52D-8 to require that the Police Commission engage in fact-finding and decide the merits of the criminal charge to determine whether Kealoha was entitled to a defense under HRS § 52D-8.

## V.    CONCLUSION

For the foregoing reasons, the "Findings of Fact, Conclusions of Law, and Decision and Order" issued by the Police Commission on May 10, 2019, and the "Final Judgment" entered by the circuit court on December 2, 2020, are affirmed.

On the briefs:

Linda Lee K. Farm,
Donna H. Kalama,
for Appellant-Appellant
City and County of Honolulu.

Denise W.M. Wong,
Duane W. H. Pang,
Deputies Corporation Counsel,
for Appellee-Appellee
Honolulu Police Commission.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge