971 P.2d 310

**Joseph ALEJADO, Plaintiff–Appellant,**

**v.**

**CITY & COUNTY OF HONOLULU and City and County of Honolulu Police Commission, Defendants–Appellees.**

**No. 21166.**

Intermediate Court of Appeals of Hawaiʻi.

Nov. 24, 1998.

As Amended on Denial of Reconsideration Jan. 15, 1999.

Debra A. Kagawa (Michael Jay Green and David J. Gierlach, on the briefs), Honolulu, for plaintiff-appellant.

Christopher A. Diebling, Deputy Corporation Counsel, City and County of Honolulu, for defendants-appellees.

BURNS, C.J., KIRIMITSU, J., and Circuit Judge LIM in place of ACOBA, J., recused.

Opinion of the Court by KIRIMITSU, J.

Plaintiff–Appellant Joseph Alejado (Appellant) appeals from the First Circuit Court's Amended Final Judgment filed November 24, 1997 pursuant to its Findings of Fact, Conclusions of Law and Order Dismissing Agency Appeal filed April 14, 1997. For the reasons stated below, we vacate the circuit court's Amended Final Judgment and remand to the circuit court for proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual History

On January 4, 1995, Appellant was a duly commissioned police officer with the City and County of Honolulu (the City). On that day, while on duty, Appellant allegedly struck Sam L. Tupuola (Tupuola) after Tupuola had been arrested. On November 6, 1996, Appellant was indicted for criminal charges arising out of this incident.[1]

On November 7, 1996, Appellant petitioned the Honolulu Police Commission (the Commission), pursuant to Hawai'i Revised Statutes (HRS) § 52D–9 (1993), to grant his request for legal representation in the criminal matter.

The Commission considered Appellant's request at a December 4, 1996 meeting. In reaching their decision, the Commission reviewed the police reports regarding Tupuola's arrest, various sections of the Honolulu Police Department's (HPD) Standards of Conduct, HPD's General Order No. 82–1 on arrests, pertinent case law, the indictment, the civil complaint, and a statement from a witness who observed Appellant's alleged beating of Tupuola and the alleged attempts of witness tampering. The Commission also met with its legal counsel.

The Commission determined that Appellant's alleged actions, as set forth in the criminal indictment, were not within the scope of Appellant's duties as a police officer[2] and denied Appellant's request for legal counsel on December 5, 1996.[3]

In a letter dated December 16, 1996, Appellant's counsel petitioned the Commission

1. Plaintiff–Appellant Joseph Alejado (Appellant) was also served with a civil summons on January 2, 1997.

2. The "Guidelines of the Honolulu Police Commission [(the Commission)] [—] Request for Legal Counsel" provide, in relevant part:

 For the purpose of determining whether a police officer's actions were done in the course and scope of employment, the Commission shall comply with the following guidelines:

 (a) A police officer's actions are presumed to be within the course and scope of employment if the actions were done during the assigned working hours.... Regardless of whether the actions occurred during the assigned working hours ..., the Commission may find that the actions were not in the course and scope of employment, if the Commission determines by a preponderance of the evidence that the actions were not in the course and scope of employment.

3. The Commission's letter to Appellant read:

 The Honolulu Police Commission is in receipt of your request for legal counsel appointed by the City and County of Honolulu in connection with a criminal suit filed against you....

 Based on an inquiry conducted by the Police Commission in accordance with Section 52D–9 of the Hawaii [Hawai'i] Revised Statutes, it has been determined that the action for which you are being sued/prosecuted was not pursuant to your duties as a police officer and was not under the color of police authority.

 Therefore, the Commission regretfully denies your request for legal representation by the City and County of Honolulu.

 Pursuant to the Guidelines of the Honolulu Police Commission on Requests for Legal Counsel, you may request a reconsideration of the Commission's determination. **Your request must be in writing and must be submitted to the Commission within fifteen (15) calendar days of the issuance of the Commission's determination.**

 Your reconsideration request should contain specific reasons and the facts supporting those reasons why you believe your actions were done on-duty and within the scope of your authority.

 If you also seek to appear before the Commission to elaborate on your reconsideration request, you must request the same.

 (Emphasis in original.)

to reconsider its denial of Appellant's request and cited case law in support of Appellant's assertions that he was acting within the scope of his duty. Prior to the reconsideration hearing on January 8, 1997, the Commission reviewed the case law cited by Appellant's counsel, as well as case law on police officer conduct cited by the Commission's legal advisor.

Appellant was subsequently provided with an opportunity to appear before the Commission at its January 8, 1997 Executive Session Meeting. Although Appellant did not appear at this hearing ("for obvious reasons as he was under criminal indictment," according to his attorney), Appellant's counsel argued that the Commission erred in determining that Appellant was not acting within the scope of his duty at the time of the incident. Therefore, he argued, Appellant was entitled to legal counsel provided by the City. Appellant's counsel did not address the second count of the indictment pertaining to the witness tampering charge, and his presentation before the Commission lasted approximately five minutes.

On January 9, 1997, after consultation with its legal advisor, the Commission affirmed its previous decision denying Appellant's request for legal counsel. Appellant was notified of the same by letter dated January 9, 1997.[4]

### B. *Procedural History*

On January 28, 1997, Appellant filed a Notice of Appeal in the First Circuit Court. On April 14, 1997, the circuit court issued Findings of Fact, Conclusions of Law and Order Dismissing Agency Appeal.[5] Final Judgment was entered on May 14, 1997. On November 24, 1997, the court filed an Amended Final Judgment in favor of Appellees and against Appellant pursuant to its Findings of Fact, Conclusions of Law and Order Dismissing Agency Appeal filed April 14, 1997. This appeal followed.

## II. *DISCUSSION*

Appellant argues that the circuit court erred in: (1) concluding that the Commission's scope of duty determination did not constitute a "contested case" hearing for purposes of HRS chapter 91; (2) finding that Appellant did not possess a sufficient "property interest" which would implicate the requirements of procedural due process upon an adverse scope of duty determination; (3) concluding that it lacked jurisdiction to review the scope of duty determination; and

---

4. *This letter read:*

Dear [Appellant's Attorney]:
The Honolulu Police Commission considered your client's request for reconsideration [of the denial of your request for legal counsel for Appellant].
The Commission heard your presentation on January 8, 1997 and considered the case law you had submitted at an earlier date. The Commission also took into consideration additional case law concerning the scope of a police officer's duties. In addition, the Commission considered documentation and reports pertaining to the allegations contained in the Indictment. The Commission also conferred with its legal counsel.
After careful consideration of the matter, the Commission has determined that your client's alleged actions were not within the scope of his duties as a police officer. Accordingly, the Commission has affirmed its earlier determination denying request for legal counsel.
A copy of this letter was also mailed to Appellant by certified mail, with return receipt requested.

5. The circuit court found:

FINDINGS OF FACT

1. The determination by the Police Commission with regard to whether a police officer was acting within the scope of his duty as a police officer is conclusive.
2. The scope of duty determination by the Police Commission does not constitute a contested case hearing for the purposes of Hawaii [Hawai'i] Revised Statutes Chapter 91.
3. Appellant does not possess a sufficient or identifiable property interest which would implicate the requirements of procedural due process under the federal or state constitutions upon an adverse scope of duty determination by the Police Commission.
4. Appellant in this case had only an expectation that he would receive legal representation based upon the clear and unambiguous language of [HRS] Section 52D subparagraph (g) [sic] and the legislative history of said section.

CONCLUSIONS OF LAW

1. The Court concludes that it lacks jurisdiction to review the Police Commission's scope of duty determination.
2. The Court concludes that Appellant in this case is not entitled to a contested case hearing.

(4) finding that the Commission's scope of duty determination was conclusive. We address each argument in turn.

## A. *Standard of Review*

On appeal, the trial court's findings of fact are reviewed under the clearly erroneous standard. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is left with a definite and firm conviction that a mistake has been made.

Conclusions of law, however, are not binding on an appellate court and are freely reviewable for their correctness. We thus review the conclusions of law *de novo,* under the right/wrong standard.

*Nishitani v. Baker,* 82 Hawai'i 281, 287, 921 P.2d 1182, 1188 (App.1996) (internal quotation marks and citations omitted).

## B. *Right to a Contested Case Hearing under HRS chapter 91*

Appellant argues that the circuit court erred in concluding that the January 8, 1997 reconsideration hearing did not constitute a "contested case" hearing under HRS chapter 91. Alternatively, Appellant argues that even if the January 8, 1997 rehearing did not constitute a "contested case" hearing, procedural due process dictates that Appellant is entitled to such a hearing, and consequently entitled to judicial review of the scope of duty determination. Because both of Appellant's assertions rest on his claim of a protected property interest under the Due Process Clause, we address these arguments simultaneously.

### 1. *Statutory Provisions*

The Hawai'i Administrative Procedure Act (HAPA) governs agency action and defines a "contested case" as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." HRS § 91–1(5) (1993). The term "agency hearing" refers "only to such hearing held by an agency immediately prior to judicial review of a contested case as provided in [HRS] section 91–14." HRS § 91–1(6) (1993).

HRS §§ 91–9 to –13 (1993) set forth the procedures to be afforded parties in a "contested case" including: (1) reasonable notice; (2) the opportunity to present evidence and argument; (3) an agency decision on the record; (4) rules of evidence, including, where oral evidence is received by the agency, the right to cross-examine and the right to submit rebuttal evidence; (5) a written decision accompanied by findings of fact and conclusions of law; and (6) a prohibition against ex parte communications.

HAPA also provides for judicial review of "contested cases":

> **§ 91–14 Judicial review of contested cases.** (a) *Any person aggrieved by a final decision and order in a contested case* or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief *is entitled to judicial review thereof under this chapter;* but nothing in this section shall be deemed to prevent resort to other means of review, redress, relief, or trial de novo, including the right of trial by jury, provided by law. . . .

HRS § 91–14(a) (1993) (emphases added).

### a. *"Agency"*

As an initial matter, in order for HAPA to apply, the Commission must be an "agency" as defined in HRS § 91–1(1) (1993). HRS § 91–1(1) defines "agency" as "each state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches." HRS § 91–1(1). The Charter of the City and County of Honolulu specifically provides the Commission with rule-making authority, and, as discussed below, due process requires that the Commission conduct contested case hearings. *See* Revised Charter of the City & County of Honolulu §§ 6–605, 6–606 (1994). Therefore, the Commission is an agency within the meaning of chapter 91 and must follow HAPA's procedural requirements in adjudicating contested cases.

### b. *"Contested Case"*

■ In order to be entitled to judicial review of the Commission's scope of duty determination, Appellant must have participated in a "contested case" hearing. Without participation in a "contested case" hearing, a party cannot be "aggrieved" and therefore has no right to appeal. *Pele Defense Fund v. Puna Geothermal Venture*, 77 Hawai'i 64, 70, 881 P.2d 1210, 1217 (1994).

■ In order to determine whether Appellant participated in, or is entitled to, a contested case hearing, we must determine whether Appellant's "legal rights, duties, or privileges ... are *required by law* to be determined after an opportunity for agency hearing." HRS § 91-1(5) (emphasis added). The phrase "required by law" "embraces both constitutional [and] statutory law." *Bush v. Hawaiian Homes Comm'n*, 76 Hawai'i 128, 134-35, 870 P.2d 1272, 1278-79 (1994).

Appellant bases his assertions of a protected property interest and entitlement to a "contested case" hearing on HRS § 52D-8 (1993), which provides:

[§ 52D-8] **Police officers; counsel for.** Whenever a police officer is prosecuted for a crime or sued in a civil action for acts done in the performance of the officer's duty as a police officer, the police officer shall be represented and defended:

(1) In criminal proceedings by an attorney to be employed and paid by the county in which the officer is serving; and

(2) In civil cases by the corporation counsel or county attorney of the county in which the police officer is serving.

HRS § 52D-9 provides the Commission with authority to determine whether an officer was acting within the scope of his duty for the purposes of legal representation:

[§ 52D-9] **Determination of scope of duty.** The determination of whether an act, for which the police officer is being prosecuted or sued, was done in the performance of the police officer's duty, so as to entitle the police officer to be represented by counsel provided by the county, shall be made by the police commission of the county. Before making a determination, the police commission shall consult the county attorney or the corporation counsel, who may make a recommendation to the police commission with respect thereto if the county attorney or corporation counsel so desires. The determination of the police commission shall be conclusive for the purpose of this section and section 52D-8.

In light of the fact that HRS § 52D-8 does not *statutorily* mandate a hearing, Appellant argues that HRS § 52D-8 "clearly provides [him] with a *constitutionally* protected property interest and benefit." (Emphasis added.) Accordingly, Appellant maintains that due process entitles him to a contested case hearing to protect against arbitrary deprivation of this interest. We agree.

### 2. *Due Process*

■ Both the federal and state Due Process Clause essentially provide that no person shall be deprived of life, liberty or property without due process of law. *See* U.S. Const. amend. XIV, § 1; Haw. Const. art. I, § 5. The purpose of these provisions is "to ensure that individuals who have property rights are not subject to arbitrary governmental deprivation of those rights." Kenneth Culp Davis and Richard J. Pierce, Jr., *Administrative Law Treatise* § 9.4 at 35 (3d ed.1994). The procedural due process guarantee of the Fourteenth Amendment and the Hawai'i State Constitution applies only when a constitutionally protected liberty or property interest is at stake. *Sandy Beach Defense Fund v. City Council of City and County of Honolulu*, 70 Haw. 361, 376, 773 P.2d 250, 260 (1989); *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

The Hawai'i Supreme Court has set forth a two-step analysis for claims of a due process right to a hearing:

[First,] is the particular interest which claimant seeks to protect by a hearing "property" within the meaning of the due process clauses of the federal and state constitutions, and [second,] if the interest is "property," what specific procedures are

required to protect it. Therefore, in order to assert a right to procedural due process, Appellants must possess an interest which qualifies as "property" within the meaning of the constitution.

*Sandy Beach,* 70 Haw. at 376–77, 773 P.2d at 260 (quoting *Aguiar v. Hawaii Hous. Auth.,* 55 Haw. 478, 495, 522 P.2d 1255, 1266 (1974)).

The circuit court held that Appellant "did not possess a sufficient or identifiable property interest which would implicate the requirements of procedural due process ... upon an adverse scope of duty determination by the Police Commission," and that Appellant "had only an expectation that he would receive legal representation...." Consequently, the circuit court concluded that Appellant was not entitled to a contested case hearing. We conclude that the circuit court was wrong as a matter of law. Appellant has demonstrated a legitimate claim of entitlement to city-provided legal representation, and, therefore, an agency hearing is "required by law." Consequently, Appellant is entitled to a "contested case" hearing conducted with the procedural protection outlined in HRS chapter 91.

 " 'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. *He must, instead, have a legitimate claim of entitlement to it.*' " *Sandy Beach,* 70 Haw. at 377, 773 P.2d at 260 (emphasis added) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. 2701). A person's interest in a benefit constitutes a "legitimate claim of entitlement" if it is supported by contractual or statutory language that might be invoked at a hearing. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Roth,* 408 U.S. at 577, 92 S.Ct. 2701.

According to the United States Supreme Court:

Property interests ... are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain

benefits and that support claims of entitlement to those benefits.

*Roth,* 408 U.S. at 577, 92 S.Ct. 2701.

### a. Relevant Case Law

Given the fact-specific nature of due process analysis, our case law provides limited guidance in determining whether Appellant possesses a protected property interest in city-provided legal representation.

The Hawaiʻi Supreme Court has recognized that an interest in continuing to receive low-cost public housing benefits constitutes a "property" interest for purposes of the Due Process Clause. *Aguiar,* 55 Haw. at 496, 522 P.2d at 1267. It has also recognized a constitutionally protected property interest in a physician's continued practice of medicine in a federally-funded private hospital. *Silver v. Castle Memorial Hosp.,* 53 Haw. 475, 484, 497 P.2d 564, 571 (1972). Furthermore, the Hawaiʻi Supreme Court has acknowledged that a driver's license is a constitutionally protected interest, stating that "[a]lthough driving is a 'privilege' rather than a constitutional 'right,' once conferred, a license becomes a constitutionally protected property interest." *Kernan v. Tanaka,* 75 Haw. 1, 22, 856 P.2d 1207, 1218 (1993) (citations omitted).

In contrast, the Hawaiʻi Supreme Court rejected assertions that aesthetic and environmental concerns rose to the level of a protected property interest. *Sandy Beach,* 70 Haw. at 377, 773 P.2d at 260. In reaching its conclusion, the court contrasted the interests in *Aguiar* and *Silver,* which involved "basic needs of housing and employment to which the plaintiffs had a 'legitimate claim of entitlement' " with those of the *Sandy Beach* plaintiffs. *Id.*

In *Reed v. Iranon,* 940 F.Supp. 1523 (D.Hawaiʻi 1996), the United States District Court for the District of Hawaiʻi rejected plaintiff-prisoners' assertion of a property interest in "gate money" upon their release. Plaintiffs claimed that because the relevant statute used the words "shall be furnished" in discussing gate money, the gate money allowance was mandatory and thereby created a protected property interest.

The court held that the language of the statute vested defendants with "complete discretion to assess inmates' needs and to award gate money as necessary in light of those needs," and consequently, no constitutionally protected property right existed. *Id.; see also Allen v. City of Beverly Hills*, 911 F.2d 367, 370 (9th Cir.1990) (holding that because of the broad discretion vested in the city to lay off the plaintiff "in the interests of the economy," plaintiff has no constitutionally protected property interest in his employment).

We agree with Appellant that *Abramson v. Board of Regents, Univ. of Hawai'i*, 56 Haw. 680, 548 P.2d 253 (1976) (instructor did not have protected property interest in continued employment), *Makanui v. Dep't of Educ.*, 6 Haw.App. 397, 721 P.2d 165 (1986) (right to participate in interscholastic activities not a "property" interest entitled to protection under the due process clause), and *Cassidy v. Hawaii*, 915 F.2d 528 (9th Cir.1990) (vessel owner failed to show that custom created legitimate expectation of renewal of mooring permit) are distinguishable as they involved *no written rule or statute on which to base* property interest claims.

We are persuaded by, and adopt the reasoning of, a recent United States District Court decision from California holding that state employees have a constitutionally protected property interest in legal representation. *See Hall v. California Dep't of Corrections*, 835 F.Supp. 522 (N.D.Cal.1993). The *Hall* court based its conclusion on a California statute which, similar to the Hawai'i statute, directed the provision of legal representation to public employees in civil actions brought against them because of acts occurring within the scope of their employment. *Id.*

In *Hall*, an inmate of the California Department of Corrections (the CDC) brought a civil action against plaintiff, a correctional officer employed by the CDC. Plaintiff's written requests for representation were denied, without explanation, other than the CDC's assertion that plaintiff was not acting within the course and scope of his employment. *Id.* at 523–24. Plaintiff argued that defendants violated his constitutional right to due process by failing to afford him notice and an opportunity to be heard prior to denying his request for legal representation. *Id.* at 523.

Plaintiff based his assertion of a protected property interest on a California statute which stated:

Except as otherwise provided in section 995.2 and 995.4, upon request of an employee ..., a public entity shall provide for the defense of any civil action or proceeding brought against him, in his individual or official capacity or both, on account of an act or omission in the scope of his employment as an employee of the public entity.

*Id.* at 525 (quoting Cal. Gov't Code § 995).

The relevant exception to this statute provided:

(a) A public entity may refuse to provide for the defense of a civil action or proceeding brought against an employee ... if the public entity determines any of the following: (1) The act or omission was not within the scope of his or her employment....

*Id.* (quoting Cal. Gov't Code § 995.2).

The court held that plaintiff had a protected property interest in legal representation and explained:

Section 995 explicitly indicates that a public entity "shall" provide a legal defense to an employee in proceedings arising out of acts or omissions within the scope of employment. Thus, state employees do not have a mere "expectation" of a state provided defense under § 995, but rather have a legitimate claim of "entitlement" to such a defense provided they meet the statutory terms of eligibility. Furthermore, state employees acquire a present interest in this benefit when they become employed by the public entity.

This is not a case where the public entity's duty to defend is permissive or discretionary. Rather, the plain language of § 995 indicates, and case law reaffirms, that the § 995 duty to defend is mandatory.

Furthermore, while it is true that the public entity "may," pursuant to § 995.2, deny § 995 legal representation if it determines that the public employee was not

acting within the scope of employment, *the discretion to deny a benefit to those who do not meet the statutory terms of eligibility does not undermine the benefit's status as a protected property interest in the first instance.*

*Id.* at 526 (emphasis added) (citations omitted).

The *Hall* court also noted that

most government benefits may be terminated or denied under certain circumstances (i.e. are conditional on the recipient meeting the statutory terms of eligibility), but to hold that this alone somehow diminishes a person's legitimate claim of entitlement would necessarily reduce many of the benefits currently recognized as property interests to mere expectancies and, therefore, leave them unprotected by due process safeguards.

*Id.* at 526–27.

According to the court, the legislative history of Section 995 supported its conclusion. Section 995, the court explained, "protects public employees from third party claims and thus motivates state employees to perform their jobs zealously." *Id.* at 527. "State employees, therefore, arguably, rely on the benefits provided for in § 995 in carrying out their daily lives and duties. It is this type of reliance that must be protected and not arbitrarily undermined." *Id.*

Although the court recognized the existence of a protected property interest, it concluded that plaintiff's procedural due process rights had not been violated. Despite the lack of a pre-deprivation hearing, "there were adequate post-deprivation procedures available" such that plaintiff was not denied due process of law. *Id.* at 523.[6]

### b. *Appellant*

In the instant case, Appellant argues that HRS § 52D–8 "clearly provides [him] with a constitutionally protected property interest and benefit." "Like all other police officers,"

Appellant argues, he has "a statutory right to legal representation provided by the City if he were to be prosecuted or sued civilly and his actions were within the scope of his duties. He is entitled to the 'property interest' and benefit by statute."

■ A constitutionally protected property interest must be founded in a source of independent law. *Roth*, 408 U.S. at 577, 92 S.Ct. 2701. The source here is HRS § 52D–8, which provides legal counsel for police officers acting within the scope of their duty. We agree with the reasoning of the *Hall* court that use of the word "shall" confers on Appellant a "legitimate claim of entitlement" to legal representation.

We note that the United States District Court for the District of Hawai'i rejected the argument that the statutory language "shall be furnished" with respect to prisoners' "gate money" necessarily created a protected property interest. *Iranon*, 940 F.Supp. at 1530. The *Iranon* court concluded that, even with such statutory language, the defendants had "broad discretion" in deciding whether to furnish gate money.

■ In the instant case, it appears that HRS §§ 52D–8 and 52D–9, when taken together, provide the Commission with significantly less discretion in deciding when to provide legal counsel. Although the Commission retains discretion to refuse counsel to those whom it finds were not acting within the scope of their duty, we agree with *Hall* that "the discretion to deny a benefit to those who do not meet the statutory terms of eligibility does not undermine the benefit's status as a protected interest in the first instance." *Hall*, 835 F.Supp. at 526. We conclude that Appellant here "possessed" the entitlement to legal representation upon his entry into the police force.

The legislative history of HRS § 52D–8 supports this result. When the initial bill was introduced in 1941, the Senate stated, "in view of the increasing number of charges, both civil and criminal, brought against police

---

6. Specifically, the court noted the "safety net" provided by Cal. Gov't Code § 996.4 (allowing an employee to sue a public entity to recover attorney's fees) and "the abundance of statutory and case law relevant to a determination of whether a state employee was acting within the scope of his employment [that is neither complex nor ambiguous]." *Hall v. California Dept. of Corrections,* 835 F.Supp. 522, 528 (N.D.Cal.1993).

officers, your committee feels that such provision [of legal representation] must be made if the morale of the force is to be maintained." Sen. Stand. Comm. Rep. No. 376 on H.B. 247, in 1941 Senate Journal at 860–61. Recognition of a protected property interest in legal representation serves the purpose of maintaining police morale. As noted in *Hall*, such a provision "protects employees from third party claims and thus motivates state employees to perform their jobs zealously." *Hall*, 835 F.Supp. at 527.

Therefore, we conclude that Appellant's "legal rights, duties, or privileges" with respect to his receipt of the benefit of city-provided legal representation are "required by law to be determined after an opportunity for agency hearing." *See* HRS § 91–1(5).

### 3. *"Contested Case" Hearing: Procedural Requirements*

As noted above, we disagree as a matter of law with the circuit court's conclusion that Appellant was not entitled to a contested case hearing. Because Appellant possesses a protected property interest, he is entitled to the adjudicatory procedures laid out in HAPA before he can be deprived of this interest.

■ At its core, procedural due process of law requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner before governmental deprivation of a significant property interest." *Sandy Beach*, 70 Haw. at 378, 773 P.2d at 261 (citing *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). HRS chapter 91 sets out the procedural requirements agencies must follow in adjudicating "contested cases." As an "agency" under HRS chapter 91, the Commission must follow the procedures set forth in HAPA in order to satisfy Appellant's due process rights.

The Hawai'i Supreme Court has made clear that HAPA's adjudicatory procedures apply to hearings which the agency is constitutionally required to provide. *Aguiar*, 55 Haw. at 496, 522 P.2d at 1267. In *Aguiar*, the Hawai'i Supreme Court stated:

Since rent increases of the type involved in this case turn on an individualized assessment of the plaintiffs' income status, such a holding would automatically invoke the adjudicatory procedures of the HAPA as the measure of the hearings to which plaintiffs are entitled, *for an agency is required to follow those procedures in all "contested cases".* HRS [§ ] 91–1(5) defines a contested case as "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." *Since rights, duties, or privileges "required by law" to be determined after a hearing include those required by constitutional right to be so determined, a holding to this effect favorable to the plaintiffs would necessarily implicate the specific adjudicatory provision of the HAPA as the measure of their procedural rights.*

*Id.* at 495–96, 522 P.2d at 1267 (emphases added) (footnote and citation omitted).

According to the court:

As we have held, the plaintiffs' "legal rights, duties, or privileges" with respect to their continued receipt of the benefit of low-rent housing are "required by law to be determined after an opportunity for agency hearing." HRS [§ ] 91–1(5). This being so, the HHA [ (Hawai'i Housing Authority) ] must follow the adjudicatory procedures of the HAPA prior to increasing rents because of any plaintiff's alleged over income status. *Those procedures embody the specific elements of notice and an opportunity to be heard which lie at the heart of all due process guarantees.*

*Id.* at 498–99, 522 P.2d at 1267 (emphasis added). *See also Bush*, 76 Hawai'i at 135, 870 P.2d at 1279 ("[t]he adjudicatory procedures of [HAPA] apply to hearings which an agency is constitutionally required to provide" and quoting legislative history to the effect that HAPA was adopted "to provide a uniform administrative procedure for all state and county boards, commissions, departments or offices which would encompass the procedure of . . . adjudication of contested cases"); *Sandy Beach*, 70 Haw. at 368, 773 P.2d at 256 ("HAPA mandates a trial-type hearing in contested cases before ad-

ministrative agencies"); *Pele Defense Fund,* 77 Hawai'i at 68, n. 9, 881 P.2d at 1214, n. 9 (no additional inquiry into specific procedures required by constitutional due process because "agency" involved, therefore, "requisite procedures invoked by statute"); *but see Medeiros v. Hawai'i Plan. Comm'n,* 8 Haw. App. 183, 797 P.2d 59 (1990) ("contested case hearing not essential to guarantee of due process"; "full rights of due process present in a court of law do not automatically attach to a quasi-judicial hearing").

■ We conclude that Appellant is *entitled* to a contested case hearing *with the full procedural protection afforded by HAPA.* The record indicates, however, that while the January 8, 1997 rehearing constituted a contested case hearing, it did not comply with HRS chapter 91. Although the Commission gave Appellant reasonable notice of the rehearing and the opportunity to present some evidence and argument, it did not provide him with (1) an agency decision on the record or (2) a written decision accompanied by findings of fact and conclusions of law. *See* HRS §§ 91–9 to –13. Therefore, we conclude that while the January 8, 1997 rehearing constituted a contested case hearing, this hearing was not conducted in full compliance with chapter 91.

We consequently decline to address the merits of whether the Commission erred in concluding that Appellant was not acting within the scope of his duty, argued by both parties in their briefs. This matter is to be properly presented, argued, and decided pursuant to an HRS chapter 91 contested case hearing conducted by the Commission, the body statutorily empowered to make this determination.

C. *Judicial Review of the Commission's "Scope of Duty" Determination*

■ In light of our discussion above, we interpret the term "conclusive" in HRS § 52D–9 consistently with our analysis of Appellant's due process right to a contested case hearing derived from HRS § 52D–8. Viewing these statutes *in pari materia,* we conclude that HRS § 52D–9's reference to the "conclusiveness" of the Commission's scope of duty determination refers to its "conclusiveness" for purposes of the City's review and does not serve to preclude judicial review.

■ In interpreting a statute, "[o]ur foremost obligation ... is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. We read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." *Mendes v. Hawaii Ins. Guar. Ass'n,* 87 Hawai'i 14, 17, 950 P.2d 1214, 1217 (1998) (internal citations, quotation marks, and brackets omitted). Further, "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1–16 (1993).

As discussed above, HRS § 52D–8 provides police officers with a *legal entitlement* to legal representation, an entitlement which they cannot be deprived of without due process of law. A consistent interpretation of HRS § 52D–9 requires that judicial review be allowed. The legislative history of these provisions clearly supports this interpretation. HRS §§ 52D–8 and 52D–9 were designed to maintain the morale of the police force in light of an increasing number of lawsuits being brought against them. *See* Sen. Stand. Comm. Rep. No. 376 on H.B. 247, in 1941 Senate Journal, at 860–861. Allowing judicial review of the scope of duty determination clearly serves this purpose.

Consequently, in light of the legislative history, and viewing HRS §§ 52D–8 and 52D–9 *in pari materia,* we conclude that Appellant may appeal an adverse scope of duty determination, after a proper contested case hearing has been held pursuant to HRS chapter 91.

III. *CONCLUSION*

For the reasons above, we vacate the circuit court's amended final judgment and remand to the circuit court to allow full compliance with HRS chapter 91.