**Electronically Filed
Supreme Court
SCWC-20-0000776
07-MAR-2023
08:28 AM
Dkt. 21 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

CITY AND COUNTY OF HONOLULU, by the DEPARTMENT OF THE
CORPORATION COUNSEL, Petitioner/Appellant-Appellant,

vs.

HONOLULU POLICE COMMISSION, Respondent/Appellee-Appellee,
and
LOUIS M. KEALOHA, Appellee.

_____

SCWC-20-0000776

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-20-0000776; Civil No. 1CC191000907)

MARCH 7, 2023

RECKTENWALD, C.J., McKENNA, WILSON, AND EDDINS, JJ., AND
CIRCUIT JUDGE KAWANO, IN PLACE OF NAKAYAMA, J., RECUSED

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This opinion addresses whether Chief Louis Kealoha
("Kealoha") was entitled to a city-paid attorney to defend him
against federal criminal charges. Kealoha was Chief of Police
for the Honolulu Police Department ("HPD"). In 2017 and 2018,

indictments were filed in the United States District Court for the District of Hawai'i against Kealoha, his wife Katherine Kealoha (together, "the Kealohas"), and additional HPD officers. Kealoha asked the City and County of Honolulu ("the City") to provide him with a defense attorney. The Department of the Corporation Counsel of the City and County of Honolulu ("Corp Counsel") recommended that the Honolulu Police Commission ("the Commission") deny the request. After a contested case hearing, the Commission ruled Kealoha was entitled to representation.

The Commission decided Kealoha met the requirements for representation under Hawai'i Revised Statutes ("HRS") § 52D-8 (2012) and Rules of the Honolulu Police Commission ("RHPC") Rule 11-1(e) (2018). The Commission concluded four acts alleged in the first superseding indictment entitled Kealoha to representation because they were done in the performance of Kealoha's duty as a police officer, even if unlawful and regardless of motive.

The City appealed. The Commission's decision was affirmed by the Circuit Court of the First Circuit ("circuit court") and the Intermediate Court of Appeals ("ICA"). The ICA concluded Kealoha's actions were done in the performance of his duty as a police officer because they are the kinds of tasks a police chief generally performs.

Preliminarily, we agree with the ICA's conclusions that the "complaint allegation" rule governing the duty to defend by insurance companies and the "scope of employment" test are inapplicable to HRS § 52D-8 determinations. We also agree with the ICA that Kealoha was not required to testify at the contested case hearing.

We disagree, however, with the analytical approaches and conclusions below regarding Kealoha's entitlement to representation. We instead hold as follows: (1) pursuant to the plain language of HRS § 52D-8, a police officer is entitled to representation only "for acts done in the performance of the officer's duty as a police officer"; (2) RHPC Rule 11-1(e) cannot expand rights of representation conferred by HRS § 52D-8; (3) the officer has the burden of establishing entitlement to representation; (4) the Commission should examine the entire record to determine whether an officer is being prosecuted for acts done in the performance of the officer's duty as a police officer; and (5) based on the record before the Commission, Kealoha did not meet his burden of establishing entitlement to representation.

We therefore reverse the Commission's May 10, 2019, findings of fact, conclusions of law, and decision and order ("decision"), the circuit court's December 2, 2020 final judgment, and the ICA's April 21, 2022 judgment on appeal.

3

## II. Background

### A. Federal indictments

On October 19, 2017, a federal grand jury returned a 20-count criminal indictment against the Kealohas, HPD Captain Derek Wayne Hahn, HPD Officer Minh-Hung Nguyen, HPD Major Gordon Shiraishi, and HPD Detective Daniel Sellers. On March 22, 2018, a federal grand jury returned a 23-count first superseding indictment.

In summary, the first superseding indictment alleged (1) Katherine Kealoha, an attorney, was appointed by a court to serve as guardian of the property for two minor children, but misappropriated trust funds to pay the Kealohas' personal expenses; (2) Katherine Kealoha purported to invest her uncle "G.K.P."'s[1] money on his behalf, but actually held the money in a bank account to pay the Kealohas' expenses; (3) Katherine Kealoha misappropriated the funds of her grandmother, "F.P.,"[2] after convincing F.P. to take out a "reverse mortgage" on her house; (4) in order to conceal their actions, the Kealohas conspired to discredit and intimidate G.K.P. by bringing false claims of criminal conduct against him; and (5) the Kealohas and the other police officers conspired to frame G.K.P. for stealing

---

[1] Gerard K. Puana, Katherine Kealoha's uncle.

[2] Florence Puana, Katherine Kealoha's grandmother.

the mailbox in front of the Kealohas' house.  The first superseding indictment also alleged the defendants provided false testimony in G.K.P.'s federal criminal trial and provided false information to the grand jury and the FBI.

A second superseding indictment returned on May 24, 2018 charged the Kealohas or Katherine Kealoha only with bank fraud, identity theft, and obstruction of official proceeding.

B.    **Administrative proceedings**

On March 21, 2018, Kealoha requested that the County retain an attorney to defend him against the first and second superseding indictments.

On January 16, 2019, Corp Counsel sent a memorandum to the Commission recommending denial of Kealoha's request for representation as to both indictments.[3]  Corp Counsel opined that the conduct alleged in the indictments was neither done in the performance of Kealoha's duty as a police officer nor in the course and scope of his employment.

---

[3]    HRS § 52D-9 (2012) provides in relevant part:

> The determination of whether an act, for which the police officer is being prosecuted or sued, was done in the performance of the police officer's duty, so as to entitle the police officer to be represented by counsel provided by the county, shall be made by the police commission of the county.  Before making a determination, the police commission shall consult the county attorney or the corporation counsel, who may make a recommendation to the police commission with respect thereto if the county attorney or corporation counsel so desires. . . .

The Commission scheduled a contested case hearing on Kealoha's request for March 6, 2019. Before the hearing, Kealoha's attorney, Kevin Sumida ("Sumida"), submitted a written argument asserting the Commission should use the "complaint allegation" rule[4] applicable to insurance companies in civil lawsuits to determine whether Kealoha was entitled to representation.

Kealoha did not appear at the hearing, but was represented by Sumida. The Commission received in evidence the indictments and documents from the administrative record.[5] Sumida did not present any additional evidence and indicated Kealoha did not wish to testify.

Corp Counsel and Sumida then presented arguments against and for application of the "complaint allegation" rule. Discussions ensued between various commissioners and Sumida regarding which factual allegations in the indictments indicated

---

[4] In the insurance context, the "complaint allegation" rule imposes a duty to defend where pleadings allege claims covered under an insurance policy. Pancakes of Haw., Inc. v. Pomare Props. Corp., 85 Hawai'i 286, 291, 944 P.2d 83, 88 (App. 1997). And "where a suit raises a potential for indemnification liability of the insurer to the insured, the insurer has a duty to accept the defense of the entire suit even though other claims of the complaint fall outside the policy's coverage." Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Hawai'i 166, 169, 872 P.2d 230, 233 (1994) (citation omitted).

[5] Included was correspondence leading up to the hearing, such as Sumida's letter to the Commission requesting representation for Kealoha, the Commission's letters to Corp Counsel about the matter, Corp Counsel's recommendations to the Commission, and letters scheduling the contested case hearing. Also included were numerous documents relating to a February 14, 2019 letter from Sumida to the Commission renewing Kealoha's request for disqualification of Commissioner Loretta Sheehan ("Sheehan").

Kealoha was being prosecuted for acts done in the performance of his duty as a police officer.

On May 10, 2019, the Commission issued its decision.[6] It focused on four overt acts by Kealoha alleged in the first superseding indictment: (1) causing law enforcement officers to surveil G.K.P.; (2) creating a false police report identifying G.K.P. as the suspect of an alleged burglary of the Kealohas' mailbox; (3) directing HPD officers to arrest G.K.P. for the fabricated mailbox theft; and (4) calling certain HPD officers on the phone.

The Commission ruled the four acts fell within RHPC Rule 11-1(e) "even if unlawful and regardless of motive[.]"[7] For example, with respect to the first overt act, the Commission stated as follows:

> The Commission finds that the factual allegations in Paragraph 37a of the First Superseding Indictment, appearing on page 211 of the record, which provide []in relevant part that ["i]n or about June 2011, L. KEALOHA . . . caused CIU officers to conduct physical surveillance of G.K.P., and to continue such surveillance from time to time through June 2013" allege acts done in the performance of Kealoha's duty as a police officer because the alleged acts, even if unlawful and regardless of motive, were incident to: (a) "a required or authorized work-related activity"; (b) "a course of conduct taking place at a time that the officer was required to engage in the course of conduct by the nature of the officer's responsibilities as

---

[6] In a separate findings of fact, conclusions of law, and decision and order dated May 10, 2019, the Commission denied Kealoha's request as to the second superseding indictment.

[7] The Commission similarly analyzed the second and third acts. For the fourth act, the Commission retained the phrase "regardless of motive" and left out "even if unlawful."

> a police officer;" and (c) "a course of conduct engaged in
> at a place that the officer was authorized to engage in it
> by the nature of the officer's responsibilities as a police
> officer." See Rules 11-1(e)(i), 11-l(e)(ii), 11-l(e)(iii).

(Cleaned up.)

## C.    Circuit court proceedings

After hearing arguments, on November 19, 2020, the circuit court affirmed the Commission's decision.[8]  In relevant part, the circuit court determined: (1) RHPC Rule 11-1(e) is consistent with HRS § 52D-8; (2) the City's proffered "scope of employment" framework "would render HRS § 52D-8 essentially meaningless, unenforceable and inapplicable"; (3) "the tripartite relationship among the officer, the county, and the officer's appointed attorney is analogous to the relationship among an insurer, defense counsel, and the insured, and, as such, the obligation to defend is determined by the complaint allegation rule"; and (4) the Commission did not err regarding the four overt acts because the four overt acts "allege typical police activity[.]"  The circuit court's final judgment was entered on December 2, 2020.

## D.    ICA proceedings

The ICA issued a published opinion, City & County of Honolulu v. Honolulu Police Commission, 151 Hawaiʻi 56, 508 P.3d

---

[8]    The Honorable James H. Ashford presided.

851 (App. 2022), on March 16, 2022, affirming the Commission's decision and the circuit court's final judgment.

The ICA first determined judicial review was permitted notwithstanding HRS § 52D-9's reference to the "conclusiveness" of a police commission's determination.[9]  151 Hawai'i at 63-64, 508 P.3d at 858-59.

The ICA then held the "complaint allegation" rule inapplicable because the obligation to defend under HRS § 52D-8 is statutory, not contractual, and because application of the rule would require the Commission to assume the truth of indictment allegations.  151 Hawai'i at 64-65, 508 P.3d at 859-60.

The ICA also deemed the "scope of employment" test inapplicable, reasoning:

---

[9]    HRS § 52D-9 (2012) provides in relevant part:

> The determination of whether an act, for which the police officer is being prosecuted or sued, was done in the performance of the police officer's duty, so as to entitle the police officer to be represented by counsel provided by the county, shall be made by the police commission of the county . . . .  The determination of the police commission shall be conclusive for the purpose of this section and section 52D-8.

(Emphasis added.)

As held in Alejado v. City & County of Honolulu, 89 Hawai'i 221, 971 P.2d 310 (App. 1998), "HRS § 52D-9's reference to the 'conclusiveness' of the Commission's scope of duty determination refers to its 'conclusiveness' for purposes of the City's review and does not serve to preclude judicial review."  89 Hawai'i at 231, 971 P.2d at 320.

> Nothing in HRS §§ 52D-8 or 52D-9, or in RHPC Rule 11-1, implicates a police officer's "purpose to serve" HPD (or lack thereof), or whether HPD derived any benefit from the police officer's alleged acts. . . . It is hard to think of any crime committed by a police officer that could have been intended by the officer to serve the police department, or from which the department could derive any benefit.

151 Hawai'i at 65–66, 508 P.3d at 860–61.

The ICA further concluded Kealoha was not required to testify at the contested case hearing.[10] 151 Hawai'i at 66–67, 508 P.3d at 861–62. The ICA noted Kealoha had a constitutionally protected property right to representation for acts done in the performance of his duty as a police officer, but that he also had a constitutional right against self-incrimination; it was impermissible to make Kealoha choose between these rights. Id.

The ICA also held HRS § 52D-8 requires that the Commission consider the police officer's alleged act, but not the officer's alleged motive. 151 Hawai'i at 67–68, 508 P.3d at 862–63. The ICA analogized concepts from criminal law to this situation, stating:

> HRS § 52D-8 requires that a police commission determine whether the **act** allegedly committed by the police officer was within "the performance of the officer's duty as a police officer[.]" In making that determination, a police commission must consider the allegations made in the

---

[10] The ICA stated: "The City also argues that Kealoha failed to sustain his burdens of proof, production, and persuasion by failing to testify during his contested case hearing that he intended the acts for which he was being prosecuted to benefit the City." 151 Hawai'i at 66, 508 P.3d at 861 (footnote omitted). As asserted by the City in its motion for reconsideration, the City never argued Kealoha needed to testify.

10

> charging document concerning the police officer's **acts** —
> the conduct element — and disregard allegations about the
> officer's motive for committing the alleged acts.

151 Hawai'i at 67, 508 P.3d at 862.

The ICA then reviewed the Commission's analyses regarding each of the four overt acts and upheld the Commission's decision.  151 Hawai'i at 68–71, 508 P.3d at 863–66. Essentially, the ICA concluded "[i]t was within the scope of Kealoha's duty as chief to cause HPD officers to surveil a suspect" or "to cause HPD officers to prepare reports" or "to cause HPD officers to arrest persons suspected of committing a crime."  Id.

The ICA also stated that the City did not contend that RHPC Rule 11-1(e) is ambiguous or that it is legally inconsistent with HRS § 52D-8.[11]  151 Hawai'i at 71, 508 P.3d at 866.

Finally, the ICA took judicial notice that a federal jury eventually found Kealoha guilty on Counts 1, 2, 6, and 8 in the first superseding indictment.  151 Hawai'i at 72, 508 P.3d at 867.  The ICA noted, however, that it "would have been contrary

---

[11]   As discussed in Section IV.C, this contradicts the record.  In addition, the ICA appears to have adopted the Commission's position that its interpretation of RHPC Rule 11 is entitled to deference.  It appears, however, that the Commission's position is an interpretation of law, not derived from any specialized expertise.  See Camara v. Agsalud, 67 Haw. 212, 216, 685 P.2d 794, 797 (1984) ("[I]n deference to the administrative agency's expertise and experience in its particular field, the courts should not substitute their own judgment for that of the administrative agency . . . ." (emphasis added)).

to the plain language of, and legislative intent behind, HRS §
52D-8 to require that the . . . Commission engage in fact-
finding and decide the merits of the criminal charge to
determine whether Kealoha was entitled to a defense under HRS §
52D-8."[12]  Id.

## E.   Certiorari proceedings

The City argues the Commission did apply the "complaint
allegation" rule, in practice, if not by name.  It also contends
the ICA erred by rejecting the "scope of employment" test and
failing to consider why Kealoha allegedly directed the
surveillance and arrest of G.K.P. (for personal gain, not public
benefit).  The City also asserts the ICA should have considered
the constitutional concerns raised by the City, because it did

---

[12]     The City filed a motion for reconsideration on March 28, 2022.  The
City argued: (1) because the ICA rejected the "complaint allegation" rule,
the ICA should have vacated the decisions of the Commission and the circuit
court, which relied on the "complaint allegation" rule; (2) the relevant
limiting language in HRS § 52D-8 is "performance of duty" not "acts"; (3) the
ICA overlooked the constitutional implications of its decision, as taxpayer
funds may only be used for public purposes; and (4) there are many instances
where HRS § 52D-8 could still apply even if the statute required an officer
to have acted, at least in part, to benefit the City — for instance, HRS §
52D-8 could potentially apply to the officers charged in the death of
Iremamber Sykap.

The ICA denied the motion for reconsideration.  The ICA noted the
Commission's order did not mention the "complaint allegation" rule, and,
although the circuit court improperly adopted the "complaint allegation"
rule, the ICA could still affirm the circuit court's judgment, but not the
order, as correct.  The ICA also declined to address the City's argument
about constitutional concerns because the City did not raise an
"unconstitutional as applied" argument before the Commission or in its appeal
to the circuit court.

not waive the issue.  Finally, the City maintains it did and does challenge the validity of RHPC Rule 11.[13]

### III. Standards of Review

#### A.    Statutory interpretation

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning.  Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.  And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

Ito v. Invs. Equity Life Holding Co., 135 Hawai'i 49, 61, 346 P.3d 118, 130 (2015) (citation omitted).

#### B.    Review of agency decisions

HRS § 91-14(g) provides:

> (g) Upon review of the record, the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;

---

[13]    The City argues the Commission refused to consider any factors other than the three factors set out in the rule, as if the rule confined, rather than aided, its analysis.

> (4) Affected by other error of law;
>
> (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

(Supp. 2016).

> Conclusions of law are reviewed de novo, pursuant to subsections (1), (2) and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact (FOF) are reviewable under the clearly erroneous standard, pursuant to subsection (5), and an agency's exercise of discretion is reviewed under the arbitrary and capricious standard, pursuant to subsection (6). Mixed questions of law and fact are reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case.
>
> A court reviewing the decision of an agency should ensure that the agency make its findings reasonably clear. The parties and the court should not be left to guess the precise finding of the agency.

In re Haw. Elec. Light Co., 145 Hawai'i 1, 10-11, 445 P.3d 673, 682-83 (2019) (cleaned up).

## C.    Agency rule interpretation

> General principles of statutory construction apply in interpreting administrative rules. As in statutory construction, courts look first at an administrative rule's language. If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning. While an agency's interpretation of its own rules is generally entitled to deference, this court does not defer to agency interpretations that are plainly erroneous or inconsistent with the underlying legislative purpose.

Panado v. Bd. of Trs., Emp.'s Ret. Sys., 134 Hawai'i 1, 11, 332 P.3d 144, 154 (2014) (citation omitted).

### IV. Discussion

**A. The ICA correctly held the "complaint allegation" rule and "scope of employment" test inapplicable and that Kealoha was not required to testify at the contested case hearing**

Preliminarily, we agree with the ICA's conclusions that the "complaint allegation" rule governing the duty to defend by insurance companies and the "scope of employment" test are inapplicable to HRS § 52D-8 determinations, and that Kealoha was not required to testify at the contested case hearing.

For the reasons discussed below, however, we disagree with the analytical approaches and conclusions below regarding Kealoha's entitlement to representation.

**B. Pursuant to the plain language of HRS § 52D-8, a police officer is entitled to representation only for acts done in the performance of the officer's duty as a police officer**

HRS § 52D-8 provides:

> Whenever a police officer is prosecuted for a crime or sued in a civil action <u>for acts done in the performance of the officer's duty as a police officer</u>, the police officer shall be represented and defended:
>
> (1) In criminal proceedings by an attorney to be employed and paid by the county in which the officer is serving; and
>
> (2) In civil cases by the corporation counsel or county attorney of the county in which the police officer is serving.

(Emphasis added.)

Under the plain language of this statute, police officers are entitled to representation only "for acts done in the performance of the officer's duty as a police officer[.]"

15

Id. Contrary to the rulings below, HRS § 52D-8 does not merely require a determination of whether the acts performed by the officer seeking representation are acts generally performed by police officers.

HRS § 52D-8 does not provide for representation for "acts that police officers generally perform." If that were the standard, police officers who effectuate arrests without probable cause for personal, non-law-enforcement-related vendettas, or who fabricate and submit false police reports for personal purposes, would be entitled to representation because arrests and preparation of police reports are "acts that police officers generally perform." Conversely, HRS § 52D-8 also does not limit representation to "acts that police officers generally perform." For example, police officers do not generally perform maritime rescues. But if an on-duty police officer attempts a maritime rescue due to unavailability of other rescue personnel, but causes an injury or death and is sued, the "acts that police officers generally perform" test could unnecessarily restrict representation under HRS § 52D-8.

Furthermore, the word "motive" does not appear in the statute, and it is also not an appropriate inquiry. Rather, the plain language of the statute requires that the Commission make an overall determination of whether acts of a police officer

16

were done in the performance of the officer's duty as a police officer.

## C. RHPC Rule 11-1(e) cannot expand rights of representation provided by the statute

The Commission and the ICA also relied on RHPC Rule 11-1(e) in ruling that Kealoha was entitled to representation. RHPC Rule 11-1(e) (2018) provides:

> For purposes of this Rule 11, the following shall be considered by the Commission in determining whether "an act, for which the police officer is being prosecuted or sued, was done in the performance of the officer's duty":
>
> (i) whether the act was incident to required or authorized work-related activity;
>
> (ii) whether the act was incident to a course of conduct taking place at a time that the officer was required to engage in the course of conduct by the nature of the officer's responsibilities as a police officer; and
>
> (iii) whether the act was incident to a course of conduct engaged in at a place that the officer was authorized to engage in it by the nature of the officer's responsibilities as a police officer.

(Emphases added.)

As the City argues, although this rule can aid an HRS § 52D-8 analysis, the statute does not parse out and focus just on whether acts are generally performed by police officers. In this regard, the ICA erroneously stated that "[t]he City does not contend that RHPC Rule 11-1(e) is ambiguous or that it is legally inconsistent with HRS § 52D-8." Honolulu Police Comm'n, 151 Hawai'i at 71, 508 P.3d at 866. The City's opening brief argued that the Commission's Rule 11-1(e), upon which it also

17

relied, is inconsistent with the statutory provisions it purported to implement. The City also asserted that

> The Rule on its face is thus contrary to the statutory provision it purports to implement, HRS § 52D-8, which does not permit representation for conduct "incident to" acts done in the performance of the officer's duty as a police officer, but rather, only for the acts themselves. . . . The Rule is thus invalid.

We need not invalidate the rule, however, as proposed by the City, because "[i]t is axiomatic that an administrative rule cannot contradict or conflict with the statute it attempts to implement." Liberty Dialysis-Hawaii, LLC v. Rainbow Dialysis, LLC, 130 Hawaiʻi 95, 107, 306 P.3d 140, 152 (2013) (citations omitted). Thus, we hold that although the rule can aid an HRS § 52D-8 analysis, it cannot expand rights of representation provided by the statute.

## D. The officer has the burden of establishing entitlement to representation

HRS § 52D-8 provides for representation "[w]henever a police officer is prosecuted for a crime or sued in a civil action for acts done in the performance of the officer's duty as a police officer[.]" The statute does not create any presumptions.[14] HRS § 91-10(5) (2012) and RHPC Rule 11-4(c) (2018) then provide that the police officer requesting representation has "the burden of proof[,] including the burden

---

[14] See generally Hawaiʻi Rules of Evidence Rules 303 (2016) and 304 (2016) regarding presumptions. Adoption of the "complaint allegation" rule might improperly create such a presumption.

of producing evidence" and "the burden of persuasion" by "a preponderance of the evidence."

Thus, the officer seeking representation has the burden of establishing the threshold question of whether the officer was acting in the performance of the officer's duty as a police officer.

**E.    The Commission should examine the entire record to determine whether an officer is being prosecuted for acts done in the performance of the officer's duty as a police officer**

Pursuant to RHPC Rule 11-4(b), and as provided in HRS § 91-10, the rules of evidence apply in contested case hearings before the Commission regarding representation requests. Alejado, 89 Hawai'i 221, 971 P.2d 310, indicates the Commission can and should examine the entire record before it to determine whether an officer is entitled to representation:

> In reaching their decision, the Commission reviewed the police reports regarding [the alleged victim's] arrest, various sections of the [HPD] Standards of Conduct, HPD's General Order No. 82-1 on arrests, pertinent case law, the indictment, the civil complaint, and a statement from a witness who observed [the officer's] alleged beating of [the alleged victim] and the alleged attempts of witness tampering.

89 Hawai'i at 223, 971 P.2d at 312.

In contested case hearings regarding representation requests, documents other than criminal charges or civil complaints, including police reports and witness statements, might be available.  Sworn testimony from people other than the

19

officer seeking representation can be presented.  The Commission

can also consider internal investigation reports, if any exist.[15]

As indicated in <u>Alejado</u>, the Commission can also consider

testimony or documents establishing police officer standards of

conduct and duties.[16]  And as provided by HRS § 91-10(4), the

Commission is also able to take judicial notice of similar or

other documents that have not been received in evidence.[17]

**F.    Based on the record before the Commission, Kealoha did not
       meet his burden of establishing entitlement to
       representation**

The Commission examined the record before it to determine

whether Kealoha was entitled to representation.  But that record

consisted only of the indictments and certain correspondence

from the administrative record received in evidence by the

Commission.

---

[15]    For example, the Maui Police Commission rules provide: "Upon receipt of the police officer's written request, the commission shall request that the chief or the chief's authorized designee prepare and submit a written report to the commission informing the commission of the current status of the department's investigation of the matter with regard to which the police officer is seeking legal representation from the County."  Rules of the Police Commission for the Maui County Department of Police § 13-101-53(a) (2000).  Honolulu does not appear to have a similar provision.

[16]    Pursuant to RHPC Rule 11-4(b), "[t]he rules of evidence as provided in HRS § 91-10 shall apply [in contested case hearings regarding representation] except that cross examination will only be provided to the extent that oral testimony is heard by the Commission."  Pursuant to the rules of evidence and as specifically provided by HRS § 91-10(4), the Commission is able to take judicial notice of such documents.

[17]    Thus, the Commission should be able to address the threshold question by evidence other than the officer's own testimony.

Article VI, Chapter 16 of the Revised Charter of the City and County of Honolulu 1973 (Amended 2017 Edition), concerning the City's Police Department, outlined Kealoha's duties as Chief of Police.[18]  Section 6-1601 provides that the Chief of Police serves as the administrative head of the Police Department. Section 6-1602 is a statement of policy regarding Chapter 16, which includes a general statement that the City's system of law enforcement "shall promote the highest possible degree of mutual respect between law enforcement officers and the people of the city and which shall provide for the expeditious apprehension of those who violate the law."  Section 6-1603, in summary, sets out minimum qualifications for the position of Chief of Police, provides for a five-year term, and also provides that the Chief of Police serves at the pleasure of the Commission.

Section 6-1604 then sets out powers, duties, and functions of the Chief of Police:

> **Section 6-1604.  Powers, Duties and Functions —**
> The chief of police shall:
> (a) Be responsible for the preservation of the public peace; the protection of the rights of persons and property; the prevention of crime; the detection and arrest of offenders against the law and the enforcement and prevention of violations of all laws of the state and city ordinances and all rules and regulations made in accordance therewith.
> (b) Train, equip, maintain and supervise the force of police officers.
> (c) Serve process and notices both in civil and criminal proceedings.

---

[18]    Relevant provisions remain unchanged in the Amended 2021 Edition.  An appellate court can choose to take judicial notice of adjudicative facts. State v. Kwong, 149 Hawai'i 106, 116-17, 482 P.3d 1067, 1077-78 (2021).

> (d) Promulgate rules and regulations necessary for the organization and internal administration of the department.
> (e) Prepare and, when deemed necessary, update a five-year plan of goals and objectives for the police department. The chief shall submit the plan and each update to the commission for review and recommendations.
> (f) Appoint the deputy chiefs of police.  A deputy chief shall have the right of reinstatement to a previously occupied civil service position in the police department when (1) the deputy chief had held a permanent appointment to the position immediately before appointment to the office of deputy chief; and (2) the deputy chief's tenure in the office has not been terminated for cause.  If exercising the right, the deputy chief shall be reinstated, without necessity of examination, to the former civil service position immediately following termination of tenure as deputy chief.
> (g) Perform such other duties as may be required by this charter or by law.

Also, under the HPD standards of conduct, officers must enforce the law and be truthful at all times, and shall not falsify records or commit any criminal act.  See Honolulu Police Dep't, City & Cnty. of Honolulu, Pol'y No. 2.21, Standards of Conduct of the Honolulu Police Department, art. VII, § C(16)–(17), (19) (2016).

The Commission and the ICA focused on four acts performed by Kealoha in ruling he was entitled to representation: (1) causing law enforcement officers to conduct surveillance of G.K.P.; (2) creating a false police report identifying G.K.P. as the suspect of an alleged burglary at the Kealohas' residence; (3) directing HPD officers to arrest G.K.P. for the fabricated mailbox theft; and (4) calling certain HPD officers on the phone.

Kealoha had the burden of establishing entitlement to representation, but presented no evidence in addition to the

indictments and administrative record letters received in evidence by the Commission.[19]  He relied solely on the "complaint allegation" rule, which does not apply.  Although the Commission, the circuit court, and the ICA applied different analytical approaches, they all focused on whether four overt acts were the kinds of acts that fall within Kealoha's duties, without focusing on whether he met his burden of establishing that he performed them in performance of his duties.

The record before the Commission did not establish that any of the four acts were acts done in the performance of Kealoha's duties as Chief of Police.  On its face, the second act of creating a false police report was not part of Kealoha's duties as Chief of Police.  With respect to the first, third, and fourth acts, although ordering surveillance, directing officers to effectuate an arrest, and exchanging phone calls might be part of the Chief of Police's duties, here, the first superseding indictment alleged these actions were taken "in furtherance of the conspiracy" to frame G.K.P.  The first superseding indictment charged Kealoha and his co-conspirators

---

[19]    The exhibits before the Commission did include a September 7, 2016 letter from Katherine Kealoha to the Commission, in which Katherine Kealoha defended herself and Kealoha regarding the alleged "mailbox" conspiracy. However, Sumida submitted this letter as part of his request for disqualification of Sheehan, not as part of his argument about why Kealoha was entitled to representation.  In any event, the Commission did not cite the letter, or any other source apart from the indictments, in its decision, and the letter did not establish that Kealoha met his burden.

with "improperly us[ing] their authority to prevent the discovery and disclosure of [the Kealohas'] precarious financial condition and prior malfeasance"; "misusing the resources of CIU, by executing unconstitutional searches and seizures, and by abusing their official positions and law enforcement authority"; and attempting to "fabricate, alter, and conceal evidence in order to support false claims of criminal conduct by G.K.P. . . . ."

Kealoha's duties did not include overseeing a criminal conspiracy to hide his and his wife's misappropriation of funds belonging to others. His duties did not include conspiring to frame his wife's uncle for a crime he did not commit. Kealoha failed to meet his burden of establishing that he was being prosecuted for acts done in the performance of his duties as Chief of Police.[20] Hence, the Commission's decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.

### V. Conclusion

This case involves a highly unusual representation request made by the Chief of Police. The criminal charges against Kealoha were extraordinary.

---

[20] We also note that with respect to the "mailbox conspiracy," Kealoha was reporting a purported but false "crime" as an alleged "victim," not as a police officer.

We note that the stated purpose of HRS § 52D-8 is to maintain "the morale of the force[.]"  See S. Stand. Comm. Rep. No. 376, in 1941 Senate Journal, at 860–61.  Consistent with this purpose, both HRS § 52D-8 and RHPC Rule 11-1(e) contain broad language entitling police officers to representation in most circumstances.  Even if acts purportedly exceeding a police officer's duty as a police officer are alleged, such as use of unreasonable force or driving at excessive speeds to effectuate a legitimate arrest, representation should be available because the officer was initially acting to perform the officer's duty as a police officer.

But nothing in this record indicated that Kealoha was acting in any way to perform his duties as Chief of Police.

Finally, we also note that HRS § 52D-8 is also for the benefit of the public:

> The duties of a [police officer] are performed for the benefit of the public. . . . [I]t is for the public good that these officers, as instruments through which the city performs its functions, shall be shielded from the personal hazards which attend the discharge of their official duties.  With such protection afforded, the public can expect that its laws will be zealously enforced without any hesitation occasioned by considerations of possible personal involvement in defending resulting litigation.

Sinclair v. Arnebergh, 36 Cal. Rptr. 810, 813 (Ct. App. 1964) (cleaned up).  Taxpayer-funded representation for officers whose acts are in the performance of their duties as police officers benefit the public.  Taxpayer-funded representation for officers

25

whose acts are not in the performance of their duties as police officers do not.[21]

In conclusion, for the reasons discussed in Section IV, we reverse the Commission's May 10, 2019, findings of fact, conclusions of law, and decision and order, the circuit court's December 2, 2020, final judgment, and the ICA's April 21, 2022 judgment on appeal.[22]

Donna H. Kalama
for petitioner

Duane W.H. Pang
for respondent

/s/ Mark E. Recktenwald

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

/s/ Kelsey T. Kawano

---

[21] We do not address the constitutional grounds alleged by the City based on article VII, section 4 of the Hawaiʻi Constitution, which provides, "[n]o tax shall be levied or appropriation of public money or property made, . . . directly or indirectly, except for a public purpose."

[22] The record does not reflect whether the City did actually retain an attorney to defend Kealoha with respect to the first superseding indictment; we do not address whether there are any possible financial consequences of this opinion.